**Opinion issued September 10, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00535-CV

———————————

**GARY JONES AND CAROLYN JONES, Appellants**

**V.**

**PESAK BROTHERS CONSTRUCTION, INC., Appellee**

---

**On Appeal from the 2nd 25th District Court**
**Colorado County, Texas**
**Trial Court Case No. 22171-CV**

---

## O P I N I O N

When their newly-constructed house showed signs of foundation distress, Gary and Carolyn Jones sued their builder, Pesak Brothers Construction Company (Pesak Brothers), for breach of a construction contract, express and implied warranties, negligent construction of the home, and for violations of the Texas

Deceptive Trade Practices Act. After a jury trial on the Joneses' claims, the trial court entered a take-nothing judgment, in accordance with the jury's verdict.

On appeal, the Joneses challenge the legal and factual sufficiency of the evidence supporting the jury's findings. They also contend that the trial court erred in refusing to submit their negligence claim to the jury and by striking their sixth amended petition, and they raise challenges to certain of the trial court's evidentiary rulings. We hold that sufficient evidence supports the jury's verdict, and the trial court did not err in deciding the other challenged rulings. We therefore affirm.

## Background

In 2006, the Joneses hired Pesak Brothers to build a house for them on the Joneses' seventy-eight-acre property near Columbus, Texas. Pesak Brothers referred the Joneses to Steven Kieschnick, of Kieschnick's Designs in Wood, to select a floor plan from several blueprints that he had available. After selecting a plan, the Joneses returned to Pesak Brothers and signed a two-page construction agreement. The agreement specifies the square footage of the living area, garages, and porches, as well as the materials that Pesak Brothers would use in constructing the home. It itemizes the specifications for the foundation, framing, roofing, electrical wiring, insulation, exterior finish, painting, plumbing, floors, doors, windows, interiors, gas outlets, and air conditioning and heating. Pesak Brothers

2

bid $310,000 for the total construction cost, but the agreement explains that the Pesak Brothers would calculate the amount due based "on a cost plus 10% for operating expenses and liability insurance." The agreement does not address grading of the land surrounding the construction site.

Kieschnick provided a list entitled "[s]pecifications for the home of Mr. & Mrs. Gary Jones." The list identifies Kieschnick as a "draftsman and craftsman," and it reiterates and elaborates on the construction tasks and items identified in the Pesak agreement. Pertinent to this appeal, the list recites that "[g]eneral notes, all materials and workmanship should meet or exceed local building code and also the Universal Building Code Book. Any changes made should be cleared with the homeowner." Among other things, Kieschnick's list specifies: "Excavation—virgin soil"; "Gutters and Downspouts—none"; and "Landscaping—by owner." Kieschnick's list is otherwise silent with respect to the diversion of water outside the home or the grading or other improvements to the land. Kieschnick's list is unsigned, and neither the Pesak agreement nor Kieschnick's list refers to or acknowledges the existence of the other.

Before Pesak Brothers completed its construction, Robert Pesak and Mr. Jones discussed who would take responsibility for completing the grading near the house and hardscaping on the lot. Pesak asked Mr. Jones "if he wanted [Pesak Brothers] to do the grading and he said no, that he was going to." Mr. Jones owned

3

three pieces of earth-moving equipment—a tractor, a front-end loader, and an excavator. He had gained experience using them to clear over 200 fallen trees on his Louisiana property following Hurricane Katrina, and he enjoyed moving soil around on his property with them. Mr. Jones told Pesak that he would contract directly with Sanchez Construction to install the concrete driveway, patio, and sidewalks surrounding the house. Mr. Jones acknowledged that, by contracting with Sanchez directly for the hardscaping, the Joneses avoided the "cost plus ten percent" that Pesak Brothers would have charged under the construction agreement, and that the Joneses also saved money by choosing to grade the property themselves.

Pesak Brothers completed construction, and the Joneses closed on the house in December 2006. Pesak presented the Joneses with a final invoice in the amount of $334,839.96. Pesak explained that the amount due exceeded the estimate contained in the agreement because of additional items not accounted for in the original estimate that Pesak Brothers provided, at the Joneses' request, during construction. Mr. Jones protested that final amount and insisted that he had agreed to pay no more than $300,000 for the house. Mr. Jones told the jury that he suspected that Pesak Brothers had added the "cost plus ten percent" provision after the Joneses signed the agreement. The parties negotiated the claimed overage. Pesak Brothers ultimately agreed with the Joneses to split the difference in the

4

claimed overage amount and accepted $20,000 in exchange for signing the certificate of completion. In the certificate, the parties averred:

1. Improvements Debts or Liens. Except as indicated below, Contractor states that there are no unpaid debts and OWNER states that he has not received any notices from any contractors or subcontractors with respect to the Project or with respect to any of the following items which may be remaining on the Property: <u>Mirror, shutters on the front of house, Home Warranty Policy, concrete steps and bonus room as per plans and specifications dated as of March 22, 2006</u> . . . .

…

3. Certificate of Completion. The project has been completed in a good and workman-like manner and in accordance with the plans and specifications approved by the Owner. The Contractor has duly paid all bills and invoices for any labor and/or materials furnished in connection with the Project and has not received notices of any claim of mechanic's or materialman's liens against the property. The OWNER has fully accepted the completed Project and has not received notices of any kind of any claim of mechanic's or materialman's liens against the property.

The evidence is uncontested that, other than the typical grading that builders perform in the course of constructing the home, neither Pesak Brothers nor its subcontractors graded the site before the parties executed the certificate of completion.

In January 2007, around the same time that the Joneses moved into the house, Sanchez added a sidewalk on the north side of the house, a driveway on the east side, and a patio on the south side. Mr. Jones used his front-end loader to contour the land around the house. Mr. Jones also attempted to divert water from

5

the house's foundation by cutting three terraces on the west side, and he built a stone wall uphill from the house. He conceded that he did not know any particular grading requirements, such as the degree of slope, to use.

In February, Mr. Jones called Pesak to report that he had found cracks in the exterior mortar. Pesak told Mr. Jones to add soil around the foundation. Eventually, cracks appeared in the inside walls, and windows and doors began to stick. According to Pesak, Mr. Jones's failure to grade the foundation soon after Pesak Brothers completed construction caused this damage. Pesak also testified that the placement of the sidewalks, patio, and driveway prevented adequate grading around the home. He explained that the hardscaping around the house acted like a dam: instead of diverting rainwater away from the foundation, it detoured the water flow around the foundation until it settled underneath the west side.

The Joneses hired engineer Gary Boyd, who prepared a report in January 2008 concluding that the foundation slab was tilting, or "heaving," and stating that it was his "professional recommendation that proper drainage be established adjacent to the foundation sufficient to satisfy the International Residential Code [IRC] Building Requirements."

The Joneses initiated an administrative complaint against Pesak Brothers with the now-defunct Texas Residential Construction Commission (TRCC).[1] TRCC sent its own inspector, John Brown, to investigate. He concluded in April 2008 that the surrounding soil had not been properly graded and that, as a result, the foundation had experienced post-construction differential movement that had damaged the house.

Brown also opined that the areas enclosed by the sidewalk should be "filled and graded to provide a drainage slope away from the foundation." Brown identified nineteen construction defects in the house. These included wiring problems and a leak in the septic tank fill line, but of paramount concern was the failure to provide an adequate slope around the foundation away from the house to protect the foundation from damage due to surface drainage. He concurred with Boyd that the lack of proper grading resulted in heaving, which caused the windows and doors to stick or drag and cracks in the sheetrock and brick veneer.

---

[1] The Texas Residential Construction Commission Act expired September 1, 2009, through application of the Texas Sunset Act, when the Legislature abolished the Residential Construction Commission. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 458, § 1.01, 2003 TEX. GEN. LAWS 1703, 1705 (former TEX. PROP. CODE ANN. § 401.006). During its existence, the Commission administered a state-sponsored inspection and dispute resolution process, which a homeowner or builder had to invoke before filing suit on an action for damages or other relief arising from a "construction defect." *See* Act of June 20, 2003, 78th Leg., R.S., ch. 458, § 1.01 (former TEX. PROP. CODE ANN. § 426.005(a)).

In a July 7, 2008 letter to the Joneses' attorneys, Pesak Brothers offered to make Brown's suggested repairs without additional charge and explained how it would remedy each defect identified in Brown's report. With respect to the foundation issues identified in Brown's report, Pesak Brothers proposed to grade the area on the west side of the home to the proper five percent slope to divert the water from the foundation and repair cracks and other cosmetic distress. The Joneses, who had instituted this lawsuit several days before receiving the letter, did not accept Pesak Brothers' offer.

Mr. Jones suffered a heart attack in December 2008. The Joneses amended their pleadings to include, as part of their DTPA claim, allegations that Pesak Brothers' conduct caused Mr. Jones's heart attack and that he was entitled to damages for his physical injury and mental anguish.

At the close of the Joneses' case in chief, Pesak Brothers moved for a directed verdict on the Joneses' negligence claim. The trial court took the motion under advisement, telling the parties it would decide the issue before submitting the charge to the jury. At the charge conference, the trial court declined the Joneses' proposed submission of a negligence claim. The jury found that Pesak Brothers was not liable for the Joneses' remaining contract, DTPA, and breach of warranty claims.

## Discussion

## I. Evidentiary Sufficiency

### A. Legal sufficiency of the evidence supporting the jury's adverse findings on the Joneses' breach-of-contract and breach-of-warranty claims

According to the Joneses, the TRCC inspector's report created a presumption that Pesak Brothers had breached both the contract and warranties of good and workmanlike construction, and thereby shifted the burden of proof to Pesak Brothers to show that the inspector's findings were inconsistent with applicable building and performance standards. Because of the inspector's report, the Joneses contend, the evidence conclusively established Pesak Brothers' liability. Though the jury found to the contrary, the Joneses are entitled to reversal and rendition of the judgment in their favor if they have established Pesak Brother's liability as a matter of law. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (explaining that a party attacking legal sufficiency of adverse finding on an issue on which party bears burden of proof "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue," and that party may prevail on appeal only if no evidence supports finding and "the contrary proposition is conclusively established"); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex. 2005) (explaining nature of conclusive evidence).

9

In the trial court, the parties agreed that a presumption created by the TRCCA applied to their dispute.[2] The court therefore instructed the jury, congruent with the former statute, that

> in any action involving a construction defect brought after a recommendation of a third-party inspector or ruling by a panel of state inspectors on the existence of the construction defect or its appropriate repair, the recommendation or ruling shall constitute a rebuttable presumption of the existence or nonexistence of a construction defect or the reasonable manner of repair of the construction defect.

The Joneses point to the instruction, coupled with the inspector's report, as conclusively establishing liability. We disagree with the Joneses' interpretation. "[T]he existence . . . of a construction defect" does not have the same meaning as "the existence of a defendant's liability for a construction defect." No party disputed the existence of the construction defect at issue in this case; Pesak Brothers agreed with the Joneses that the soil around the house was not properly graded. Their dispute turned not on whether the grading was substandard, but instead, on whether Pesak Brothers had agreed to grade the Joneses' property in the first place. The presumption relied on by the Joneses does not relieve them of

---

[2] We express no opinion about the applicability of the TRCCA—in particular, of former section 426.008)(a)—to this case. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Res. Co.*, 299 S.W.3d 106, 112 (Tex. 2009) ("Because there was no objection to the charge as submitted, we assume, without deciding, that the instruction was correct and measure the evidence by the charge as given.") (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that court's charge measures sufficiency of evidence in absence of objection)).

their burden, as plaintiffs, to prove that Pesak Brothers should be held liable for the substandard grading and the resulting damage. The presumption established only that the grading was defective, not that Pesak Brothers had assumed responsibility to perform the grading. We hold that the Joneses do not prevail as a matter of law on their breach of contract and breach of warranty claims, so as to require reversal of the jury's verdict.

## B.    Factual insufficiency challenge

### 1.    Standard of review

The Joneses next challenge the factual sufficiency of the evidence supporting the jury's findings in response to the Joneses' breach of contract, breach of warranty, and DTPA liability issues. "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. In reviewing the record under this standard, we consider and weigh all of the evidence; we set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* We must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Id.* (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635

(Tex. 1986)). The jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *City of Keller*, 168 S.W.3d at 819. Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in harmony with their verdict. *Id.* at 820.

### 2.    Analysis

All of the Joneses' causes of action turn on whether Pesak Brothers was responsible for the improper grading and, consequently, for the damage to the foundation and other parts of the home.[3] The Joneses' live petition alleged that Pesak Brothers:

- failed to prepare grading and drainage around the foundation as required by the TRCC;
- represented that the house would be built in a workmanlike manner in compliance with accepted building standards and methods and that it was habitable when it had not graded the site to provide appropriate drainage "that was essential to the structural integrity of the foundation"; and

---

[3]    The Joneses also alleged that Pesak Brothers made errors in constructing the foundation itself, but the evidence at trial did not prove as a matter of law either that Pesak Brothers constructed a faulty foundation or that any error in constructing the foundation caused the damages claimed by the Joneses.

- failed to disclose that the "landscaping" referred to in the agreement was actually finish grading that was essential to proper drainage.

Each of their claims required the Joneses to prove that Pesak Brothers had a duty—whether derived from the contract or imposed by law—to grade the site after constructing the house. We consider this issue in the context of each claim below.

### a. Breach-of-contract and breach-of-warranty claims

Although breach of warranty and breach of contract are distinct causes of action, an express warranty comprises part of the basis of the bargain and thus is contractual in nature. *Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008). Both breach-of-contract and breach-of-warranty claims "involve[] a party seeking damages based on an opponent's failure to uphold its end of the bargain." *Id.* (citing *U.S. Pipe & Foundry Co. v. City of Waco*, 108 S.W.2d 432, 434 (Tex. 1937)). We therefore consider the Joneses' factual-sufficiency challenges on these issues together.

Charge question 1 asked the jury:

> Did Pesak Brothers Construction, Inc. fail to comply with the material terms of the agreement with Gary and Carolyn Jones?
>
> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

13

The charge defined an express warranty as "any affirmation of fact or promise made by Pesak Brothers Construction, Inc. that relates to the construction of the home and becomes part of the basis of the bargain." The charge explained that an implied warranty includes "failing to perform services in a good and workmanlike manner" or "[s]elling a home that was not suitable for human habitation." The jury found no breach of a material term of the agreement, and no failure to comply with a warranty that was producing cause of any damage to the Joneses.

The written construction agreement does not mention grading. The Joneses assert that Kieschnick's list was part of their agreement with Pesak Brothers through the doctrine of incorporation by reference. We disagree. "Documents incorporated into a contract by reference become part of that contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (citing *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam)). "[A]n unsigned paper may be incorporated by reference into a paper signed by the person to be charged." *Trico Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)). The document signed by the defendant, however, must plainly refer to the other writing. *Id.* No reference to Kieschnick's list appears in the Pesak Brothers agreement.

At trial Pesak testified that he had offered to provide the grading work at the cost-plus-ten-percent rate set forth in the agreement, but Mr. Jones declined the offer. Mr. Jones told Pesak that he would take responsibility for grading the property, as well as for installing the sidewalks, patio, driveway, and landscaping. The record shows that Mr. Jones complained that Pesak Brother's final invoice on the home was excessive, even though his complaint was inconsistent with the agreement's financial terms. The jury could have considered the evidence concerning the parties' financial discussions to find that the additional cost the Joneses would have incurred by having the work performed under the written agreement led to their decision to assume the responsibility for the grading, hardscaping and landscaping, which, the jury heard, also involves grading the soil around the house to protect the foundation.

The Joneses contend that Pesak Brothers' July 2008 letter offering to repair defects identified by the state inspector is tantamount to an admission that Pesak Brothers had assumed the responsibility to grade at least the western side of the property surrounding the house. The relevant contents of that letter follow:

> We have reviewed the inspection report filed by John Brown as part of the TRCC SIRP process. As we have stated before, we are very aware of the problems that exist with the Jones home and are still willing to fix them, with the cooperation of the Jones[es].

> We have listed each alleged defect from the inspection report and the suggested method of repair:

> *#1 Alleged Defect*: Improper grading and drainage around foundation.

15

*Repair Method*: Pesak Brothers Construction will grade the area on the west side of the home to the proper 5% slope to defer water from the foundation. Pesak Brothers Construction did not construct the sidewalks, the driveway, nor the back porch patio area surrounding the remainder of the home. Therefore, we should not be responsible for those areas.

. . .

*#11 Alleged Defect*: Cracks in brick on front and west side of house.

*Repair Method*: We agree with [the Boyd's engineer and the TRCC inspector's] observations of the ground "heaving" around the foundation. We also agree to slope the area around the foundation on the west side of the house to satisfy the IRC [International Residential Code] Building Code requirements (5% grade slope for the first 10 feet around foundation). . . .

We are anxious to make these repairs upon the okay by the homeowner, Mr. Gary Jones. We are and have been very cooperative throughout this whole ordeal and area ready to settle these problems.

This letter does not render the jury's no-breach findings against the great weight and preponderance of the evidence. Pesak Brothers sent the letter, albeit untimely, in connection with the dispute resolution process available under the TRCCA. Former section 27.004 of the Texas Property Code gave Pesak Brothers the option to respond to the Joneses' claim with an offer to repair any claimed construction defect and describe in reasonable detail the repairs it would make. If the claimants received a compliant offer to repair, the statute required them either to accept the offer or refuse the offer in writing and explain in reasonable detail why they considered the offer unreasonable. Act of June 15, 2007, 80th Leg., R.S., ch. 843 § 3, 2007 Tex. Gen. Laws 1753 (formerly codified at TEX. PROP. CODE ANN. § 27.004(d)).

16

Pesak Brothers' letter explained that it was in response to the TRCC's inspection report, and it expressly declared that it "was ready to settle these problems." Pesak testified that, when he made the offer to repair, the grading work would have cost approximately $2,000. Viewed in this context, the jury reasonably could have rejected the Joneses' contention that Pesak Brother's willingness to repair the defects constituted an admission of liability.

Next, the Joneses cite the testimony of their engineering expert, Thomas Gessner, opining that: (1) under the standard of care for local builders, Pesak Brothers should have had an engineer design the foundation; (2) a properly designed foundation would not have been damaged by soil heaving when it got wet; and (3) the standard of care required the builder to grade the soil to establish a proper slope. Gessner criticized the quality of the foundation, but he did not attribute the foundation's movement to any of the particular flaws he identified relating to its construction; in fact, Gessner specified that he had no opinion about the cause of the foundation's movement. Further, although Gessner included grading among the requirements for a stable foundation, he testified that he did not know who had taken responsibility for the grading around the house and that he did not offer any opinion about that issue.

The remaining evidence supports a finding that the lack of proper grading caused the damage to the home. The TRCC inspector agreed with Boyd's report

17

that the foundation movement resulted directly from the poor drainage around the home, and that the resulting heaving caused the problems with the windows and doors, as well as the cracks in the sheetrock and brick veneer.

The Joneses also direct us to Mr. Jones's testimony, in which he recounted a conversation with Pesak:

> Q. During the conversations you had with the Pesak Brothers personnel on the west wall, on the west end of your house, did it become apparent to you, without saying what they said, that they knew that that place needed to be graded?
>
> A. Yes.
>
> Q. And did you ask them to do it?
>
> A. I believe I did.

This testimony contradicts Pesak's testimony that Mr. Jones had refused Pesak's offer to perform the grading. The jury reasonably could choose to credit Pesak's testimony over Mr. Jones's testimony on this issue. *See Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Pesak Brothers' implied warranty obligations to the Joneses extended to the work within its control. *Cf. Centex Homes v. Buecher*, 95 S.W.3d 266, 274–75 (Tex. 2002) (holding that implied warranty of good workmanship can be disclaimed when agreement expressly provides for manner of performance or quality of construction). The Joneses point to Pesak's lack of familiarity with the IRC provisions addressing grading requirements. Whether Pesak knew the IRC,

18

however, does not bear on whether Pesak Brothers had the responsibility to perform the grading work.

The task of resolving the conflicting evidence as to who should have graded the land belonged to the jury. Because some evidence supports the jury's findings, we hold that the trial court properly entered judgment on the jury's verdict and denied the Joneses' motion for new trial on their breach-of-contract and breach-of-warranty claims.

### b. DTPA claims

A consumer may bring a DTPA cause of action for either a violation of section 17.46(b) of the DTPA (the "laundry list") or for an unconscionable action or course of action if the violation "constitute[s] a producing cause of economic damages or damages for mental anguish." TEX. BUS. & COM. CODE ANN. § 17.50(a)(1), (3) (West 2011). The Joneses brought both types of claims, which the jury considered under charge questions 2 and 3.

Charge question 2 asked the jury to find whether Pesak Brothers "engage[d] in any false, misleading, or deceptive act or practice that Gary or Carolyn Jones relied on to their detriment" and was a producing cause of their damages. The charge asked the jury to consider whether Pesak Brothers:

> a. Represent[ed] that the home as completed had or would not have had the characteristics that the home did not have, or

b. Represent[ed] that the home was or would be of a particular quality when it was of another, or

c. Fail[ed] to disclose information about the home that was known at the time of the transaction with the intention to induce Gary or Carolyn Jones into a transaction that they otherwise would not have entered into if the information had been disclosed.

The jury answered "no."

The Joneses first point to the construction agreement as evidence supporting their DTPA claim because the home did not comply with any applicable building code. The reference to compliance with building codes, however, appears in Kieschnick's list, not in the construction agreement and, as a result, cannot be attributed to Pesak Brothers so as to impose liability as a matter of law. The Joneses further contend that the statement in the certificate of completion that Pesak Brothers had completed its work "in a good and workmanlike manner" constitutes an actionable misrepresentation, because Pesak failed to complete the grading around the foundation. Before Pesak executed the certificate, the parties had discussed the final grading work, and the jury resolved the conflicting evidence on that issue in favor of Pesak Brothers. The certificate of completion does not specifically address the grading work, and the jury's resolution of the conflicting evidence on that issue supports the conclusion that the certificate of completion does not contain any actionable misrepresentation.

Third, the Joneses contend that Pesak Brothers committed a DTPA violation as a matter of law by concealing other foundation problems with the home. This record, however, does not support that contention. The Joneses' own foundation expert, Daniel Wick, testified that he did not observe any issues with the slab other than a slight wave in one area that was not unusual in construction, and that the issue was so insignificant that he did not bother to mention it to Pesak Brothers.

Fourth, the Joneses claim that Pesak Brothers deviated from a disclaimer at the bottom of the house plans, stating that "any engineering aspects to be specified to actual site and construction conditions," which, they contend, committed Pesak Brothers to hire a foundation engineer. The jury reasonably could have rejected the interpretation that this language required the builder to hire an engineer. Pesak Brothers explained that the disclaimer is from the plan designer and meant only that the home was not designed for any particular lot or its conditions. The jury was entitled to credit that explanation and find that the disclaimer did not constitute an actionable misrepresentation under the DTPA.

Charge question 3 tasked the jury with finding whether Pesak Brothers' conduct violated the provision of the DTPA that prohibits unconscionable conduct. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(3). In accordance with the statute, the charge defined "unconscionable action or course of action" as "an act or practice that, to a consumer's detriment, takes advantage of the lack of knowledge,

21

ability, experience, or capacity of a consumer to a grossly unfair degree." The jury found that Pesak Brothers did not engage in any unconscionable action or course of action that was a producing cause of damages to either Mr. or Mrs. Jones. The Joneses' complaints, in the main, are problems that arose from the lack of proper grading. The evidence does not support the conclusion that Pesak Brothers failed to comply with any code requirement that produced the foundation's heaving and movement. We hold that the jury's decision not to assign fault to Pesak Brothers for Joneses' DTPA claims is not against the great weight and preponderance of the evidence.

## II.     Refusal to Submit Negligence Claim

The Joneses contend that the trial court erred in refusing to submit their negligence claim to the jury, effectively granting Pesak Brothers' motion for directed verdict on that claim. The Joneses premised their negligence claim on allegations that Pesak Brothers failed to act with due care by selecting a construction site for the house that had serious drainage problems, which it then failed to remedy. In addition to seeking economic damages, the Joneses sought damages for Mr. Jones's physical injuries, alleging that the Pesak Brothers' negligence caused Jones to suffer his heart attack.

The issue of whether the evidence at trial gives rise to a fact issue for jury determination on the existence of a legal duty, and for granting or denying a

22

directed verdict, is one of legal sufficiency. *See City of Keller*, 168 S.W.3d at 809, 827. We consider whether there the record contains any evidence of probative force to raise a fact issue on the question presented. *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684 (Tex. 2004). We will credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. "A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to a judgment." *Byrd v. Delasancha*, 195 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.).

The Joneses rely on the Texas Supreme Court's 1949 decision in *Montgomery Ward & Co. v. Scharrenbeck* in asserting that Pesak Brothers' negligent performance of the construction contract caused their damages. 204 S.W.2d 508 (Tex. 1947). In *Scharrenbeck*, the defendant contracted to repair a water heater, but improper installation caused a fire that destroyed the plaintiff's home. *Id.* at 509. The Court held that the defendant breached its contract by failing to repair the water heater properly, but, because the defendant's error caused the destruction of the plaintiff's home, the defendant breached a common-law duty as well, allowing for recovery in tort. *Id.* at 510 (discussed in *Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991)).

In *Jim Walter Homes, Inc. v. Reed*, the Texas Supreme Court distanced itself from *Scharrenbeck* by reversing an award for punitive damages made in connection with the Reeds' claim for negligent construction of their home, holding that when the injury is only to the economic loss to the subject of the contract itself, the action sounds in contract alone. 711 S.W.2d 617, 618 (Tex. 1986).

To distinguish between contract and tort causes of action, we analyze the source of the duty and the nature of the remedy. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) (citing *DeLanney*, 809 S.W.2d at 494–95). If the defendant's conduct gives rise to liability because it breaches an agreement between the parties, the plaintiff's claim ordinarily sounds only in contract. *Id.* at 494. In determining whether the plaintiff may recover on a tort theory, if the damages sought are only loss or damage to the subject matter of the contract, the cause of action is ordinarily on the contract. *Id.*; *Jim Walter Homes*, 711 S.W.2d at 618. In other words, absent a duty to act independently of the promise made, failure to perform on a promise will not give rise to a cause of action for negligence. *Delanney*, 809 S.W.2d at 495 n.2 (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 655 (5th ed.1984)). If no legal duty exists, neither does a cause of action for negligence. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

The Joneses have not identified any duty that Pesak Brothers purportedly owed other than the duties connected with construction of the home, the subject matter of the contract. Pesak Brothers owed no independent legal duty "not to negligently inflict emotional distress" in performing under the contract.[4] *See Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999); *City of Tyler v. Likes*, 962 S.W.2d 489, 500 (Tex. 1997). Mr. Jones's heart attack was not a foreseeable result of any allegedly defective performance of the construction contract that would otherwise give rise to a legal duty. *See Snellenberger v. Rodriguez*, 760 S.W.2d 237, 237–38 (Tex. 1988) (holding that person who ran over child was not liable in negligence for death of police officer who suffered heart attack after controlling crowd around injured child).

The Joneses also sought to hold Pesak Brothers liable for negligence under a voluntary undertaking theory, because they had taken Pesak's suggestion to build the home on a site downhill from the location they originally considered. The Texas Supreme Court has stated that "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise

---

[4]   Certain "special relationships," including "a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial," may give rise to a legal duty to avoid causing mental anguish. *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997); *Noah v. UTMB at Galveston*, 176 S.W.3d 350, 356 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). The Joneses do not contend that any such duty existed here.

reasonable care that the other's person or property will not be injured thereby."

*Colonial Savs. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 & n.2 (Tex. 1976) (citing

RESTATEMENT (SECOND) OF TORTS § 323 (1965)); *Tex. Woman's Univ. v.*

*Methodist Hosp.*, 221 S.W.3d 267, 283–84 (Tex. App.—Houston [1st Dist.] 2006,

no pet.).  Undertaking liability requires the presence of the following specific duty

predicates:

> (1) [the defendant] undertook to perform services that it knew or
> should have known were necessary for the plaintiffs' protection,
> (2) [the defendant] failed to exercise reasonable care in performing
> those services, and either (3) [a third party charged with protecting the
> plaintiffs] relied upon [the defendant's] performance, or (4) [the
> defendant's] performance increased the plaintiffs' risk of harm.

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000). As with a simple

negligence claim, a negligent undertaking claim still requires proof that the

defendant owed the plaintiff a legal duty and violated it. *Id.* at 837; *see Entergy*

*Gulf States, Inc. v. Akrotex, Inc.*, 40 S.W.3d 201, 206 (Tex. App.—Beaumont

2001, no pet.). In arguing for a negligent undertaking claim, the Joneses rely solely

on Mrs. Jones's testimony that the downhill site presented more problems for the

house's foundation than the uphill site would have presented, and do not point to

an injury separate from the claims arising from the construction of the home. The

Joneses did not present any testimony to support a finding that proper final grading

would not have corrected for any difference in drainage between the two sites.

Because the Joneses have not shown a separate undertaking from the construction

26

contract itself, or any increased risk of harm separate from the performance under the contract, the trial court did not err in refusing to submit the Joneses' negligent undertaking claim to the jury as a separate cause of action.

## III. Evidentiary Complaints

The Joneses complain that the trial court erred in excluding the testimony of Dr. Jon Heine, Mr. Jones's treating cardiologist and the Joneses' medical expert, and in admitting certain testimony of Mark Kubena, Pesak Brothers' engineering expert.[5] They also contend that the trial court should have admitted Mr. Jones's notes of his conversations with Pesak. We review a trial court's decision to exclude or admit evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A court abuses its discretion if it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). To show the trial court abused its discretion, an appellant must demonstrate that: (1) the court erred in not admitting the evidence; (2) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case. *See* TEX. R. APP. P. 44.1(a) *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608,

---

[5]     The Joneses also complain about the trial court's evidentiary rulings relating to the testimony of the parties' damages experts. Because the record supports the jury's no-liability findings, we do not reach those issues.

27

617 (Tex. 2000); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 422 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We uphold the trial court's evidentiary ruling if we discern a legitimate basis for it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

The Joneses proffered Dr. Heine's testimony to show that the stress from the foundation problems caused Mr. Jones to suffer a heart attack in December 2008. Because Pesak Brothers owed the Joneses only the contractual duties arising under the agreement, the trial court acted within its discretion in excluding Dr. Heine's causation testimony insofar as it purported to support a negligence cause of action. The trial court allowed the jury to consider evidence that Mr. Jones suffered a heart attack in connection with the Joneses' mental anguish claim. As a result, the trial court's ruling had little, if any, impact on the judgment. *See* TEX. R. APP. P. 44.1(a).

The Joneses contend that the trial court erred in admitting Kubena's testimony about the effect of trees and tree roots on the home's foundation, because Pesak Brothers failed to establish that Kubena was qualified to render an opinion on that subject matter. The record, however, shows that Kubena had general engineering experience that qualified him to render an opinion relating to the foundation, and he testified on that issue in his deposition, relying on soil boring reports showing the presence of tree roots near the foundation. Kubena did

not specifically refer to any building code provision or address the concrete's compressive strength in his testimony, but those issues go to the weight of the evidence, not its admissibility.

With respect to the trial court's exclusion of Mr. Jones's notes of his conversations with Pesak, the Joneses do not contend that the notes contain evidence that they were not able to convey through Mr. Jones's testimony, or that the trial court prevented Mr. Jones from using the notes to refresh his recollection. Absent a showing that the trial court's exclusion of the notes probably caused the rendition of an improper judgment, we will not disturb the trial court's evidentiary ruling. *See* TEX. R. APP. P. 44.1(a).

## IV. Propriety of the Trial Court's Decision to Strike the Joneses' Sixth Amended Petition

Finally, the Joneses contend that the trial court erred in denying leave to file their sixth amended petition. The record shows that the Joneses filed their sixth amended petition within seven days before the date of trial and did not seek leave of court. If an amended pleading is filed within seven days of trial, leave of court is required. *See Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envt'l Servs., L.P.*, 226 S.W.3d 514, 520 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court does not abuse its discretion by refusing to consider an amended petition filed fewer than seven days before trial if the party fails to seek leave of

court. *See* TEX. R. CIV. P. 63; *Mensa-Wilmot v. Smith Int'l*, 312 S.W.3d 771, 778–79 (Tex. App.—Houston [1st Dist.] 2009, no pet.)

## Conclusion

Because legally and factually sufficient evidence supports the jury's verdict, we hold that the trial court properly rendered judgment on it. We further hold that the trial court did not err in refusing to submit a negligence claim, or in deciding the other challenged rulings. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.