**Robert E. SPINKS, Jr. and Stacey M. Spinks, Appellants,**

v.

**Marvin R. BROWN, M.D. and Methodist Healthcare System of San Antonio Ltd. d/b/a Southwest Texas Methodist Hospital, Appellees.**

No. 04–02–00045–CV.

Court of Appeals of Texas, San Antonio.

Dec. 11, 2002.

Rehearing Overruled April 15, 2003.

Sidney R. Meadows, The Law Office of Sidney R. Meadows, McAllen, for Appellants.

M. Kenneth Patterson and Nik A. Mimari, Patterson & Wagner, L.L.P., J. Mark Craun, Davidson & Trolio, P.C., Michael J. Murray and Sharon E. Callaway, Crofts & Callaway, P.C., San Antonio, for Appellees.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

Opinion by PAUL W. GREEN, Justice.

Appellants Robert E. Spinks, Jr. and Stacey M. Spinks claim that Robert was injured during a surgical catheterization. They sued Dr. Marvin Brown, the physician who attempted to place the catheter, and Southwest Texas Methodist Hospital ("Hospital"), the facility where the surgery occurred. The trial court rendered a summary judgment in favor of the Hospital, leaving Dr. Brown as the sole defendant.

At trial, the jury returned a take-nothing judgment in favor of Dr. Brown. In this appeal, the Spinkses contend the trial court erred in granting the Hospital's summary judgment. They also challenge the court's denial of their motion to substitute counsel. We affirm the trial court's summary judgment order, but reverse the court's decision regarding the substitution of counsel and remand for a new trial against Dr. Brown.

## BACKGROUND

On December 12, 1996, Robert Spinks was admitted to Southern Methodist Hospital for a partial toe amputation, to be performed by Dr. Marvin Brown. To aid in his recovery, Robert also had to undergo vascular surgery, a procedure which required a catheter to be placed into his bladder.

The catheterization was to be performed by Sandra L. Devine, R.N. However, when Nurse Devine attempted to insert the catheter, she was unable to get the tubing to pass into his bladder because of resistance within the urethra. Upon encountering this problem, Nurse Devine made a second attempt, this time with a smaller tube.[2] Again, she was unable to pass the tubing into Robert's bladder. Nurse Devine then ceased all attempts to place the catheter and deferred to Dr. Brown. Dr. Brown also tried to insert the catheter, this time using a guiding mechanism known as "filiforms and followers." Because of the resistance, he, too, was unable to insert the tubing. Dr. Daniel Salzstein was then called to remedy the problem. He was able to successfully complete the procedure by inserting a catheter above the pubic bone rather than through the urethra.

Months later, while undergoing physical therapy for his foot, Robert was in the midst of a squatting exercise when he "felt something pull." Following the incident, Robert noticed numerous symptoms which indicated an abnormality in his urethra. Both Robert's symptoms and his subsequent test results indicated that a fistula, an abnormal passage between two internal organs, had formed. Shortly thereafter, the Spinkses filed suit in district court against the Hospital and Dr. Brown, asserting both negligence and gross negligence.

The Hospital filed a traditional motion for summary judgment which was granted, leaving Dr. Brown as the sole defendant.[3] Six days before going to trial against Dr. Brown, the Spinkses moved to replace their counsel of record with a new attorney. The trial court denied the motion, and the case proceeded. The Spinkses now appeal to this Court, claiming the trial court erred in granting the Hospital's motion for summary judgment and in denying their motion to substitute counsel.

## SUMMARY JUDGMENT

### STANDARD OF REVIEW

■ In their first amended petition, the Spinkses allege negligence and gross negligence as the only theories of recovery, complaining of seven specific acts of negli-

---

2. Nurse Devine first attempted to place a 16 French latex rubber Foley catheter into the urethra. When this did not work, she tried a smaller tube, a 12 French coude catheter. The numbers indicate the tube's diameter.

3. Following the granting of its motion for summary judgment, the Hospital's case was severed from the Spinkses' remaining cause of action against Dr. Brown. The Spinkses filed a timely motion for new trial, and the Hospital's case was reconsolidated for purposes of appeal.

gence.[4] In order to disprove these specific allegations of negligence, a summary judgment movant has the burden of establishing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. PRO. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Lopez v. Carrillo,* 940 S.W.2d 232, 234 (Tex.App.-San Antonio 1997, writ denied). A defendant moving for summary judgment must conclusively negate one or more elements of the plaintiff's cause of action in order to prevail. *Lopez,* 940 S.W.2d at 234. We review the trial court's ruling *de novo. Coleman v. Cintas Sales Corp.,* 40 S.W.3d 544, 547 (Tex.App.-San Antonio 2001, pet. denied). That is, every reasonable inference must be indulged in favor of the nonmovant and doubts resolved in that party's favor. *Nixon,* 690 S.W.2d at 548–49. If the movant shows that no material fact issue exists and proves an entitlement to judgment, the burden then shifts to the nonmovant who must raise a fact issue to avoid summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Lopez,* 940 S.W.2d at 234. If the nonmovant fails to raise a fact issue under those circumstances, the summary judgment must be affirmed. *Lopez,* 940 S.W.2d at 234.

■ A defendant health care provider in a medical malpractice case is entitled to

summary judgment if the summary judgment proof negates one or more of the following elements of the plaintiffs' cause of action: (1) the duty to act according to a certain standard of care; (2) a breach of that standard of care; (3) an injury; or (4) a causal connection between the breach and the injury. *Silvas v. Ghiatas,* 954 S.W.2d 50, 52 (Tex.App.-San Antonio 1997, writ denied). Establishing the right to summary judgment in a medical malpractice action, as well as negating that right, generally depends on expert medical testimony. *Lopez,* 940 S.W.2d at 234. If a defendant-movant in a medical malpractice action negates an element of a plaintiff's cause of action by competent summary judgment evidence, such as expert testimony, the non-movant plaintiff is required to present controverting expert testimony in order to raise a fact issue. *Id.*

### BREACH

In support of its motion for summary judgment, the Hospital presented expert testimony in the form of two affidavits and three depositions. The affidavits were those of Nurse Devine and Dr. William P. Fitch, III, while the depositions came from Dr. Brown, Dr. Salzstein, and Dr. Michael F. Sarosdy.

### Rule 166a(c)

■ The Spinkses claim the Hospital is not entitled to summary judgment because

---

**4.** The Spinkses claim the Hospital is not entitled to summary judgment because it failed to negate the negligence of any employee other than Nurse Devine and, in addition, did not address every theory of liability in the motion for summary judgment. The Spinkses fail to introduce evidence that any employee other than Nurse Devine was involved in Robert Spinks's catheterization. Therefore, the Hospital did not need to negate the negligence of any other employee. Additionally, a hospital can not practice medicine, and, as such, can not be held directly liable for any acts or omissions that constitute medical functions. *See* TEX. OCC.CODE ANN. §§ 151.002(a)(13) & 155.001 (Vernon Supp.2002) (defining "practicing medicine" and requiring a license to "practice medicine"); *Williams v. Good Health Plus, Inc.,* 743 S.W.2d 373, 375–77 (Tex.App.-San Antonio 1987, no writ). Thus, as a matter of law, the Hospital could not have been liable under every theory of liability claimed by the Spinkses. Accordingly, the Hospital fully addressed all possible parties and acts of negligence for which it may be held liable.

the affidavits they offered as evidence do not meet the requirements of Texas Rule of Civil Procedure Rule 166a(c). Specifically, the Spinkses argue the affidavit of Nurse Devine is insufficient because it: (1) contradicts itself; (2) is not clear and direct; (3) is not free from circumstances tending to discredit Nurse Devine; (4) is not readily controvertible; and (5) cites an "irrelevant" local standard. The Spinkses' arguments have little merit.

■ First, this Court can find no way in which Nurse Devine's affidavit is contradictory. Second, Nurse Devine clearly asserts the applicable standard of care and then describes how her actions complied with this standard. *Lopez*, 940 S.W.2d at 234. Third, although Nurse Devine is an interested witness, her affidavit is clear, credible, and consistent. *See Arguello v. Gutzman*, 838 S.W.2d 583, 587 (Tex.App.-San Antonio 1992, no writ). Fourth, Nurse Devine's reference to "a reasonable degree of nursing probability" is merely surplusage, because the requirement that a medical expert's opinion be based on reasonable medical probability refers solely to the expert's opinion on causation. *Hernandez v. Calle*, 963 S.W.2d 918, 920 (Tex.App.-San Antonio 1998, no pet.). Finally, the Spinkses fail to cite any authority which states the standard of a reasonable and prudent physician or nurse differs from that of a local physician or nurse. In addition, a cited trend away from local standards, *see Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977), does not support the conclusion that Texas has completely abrogated the locality rule. *See Hickson v. Martinez*, 707 S.W.2d 919, 925 (Tex.App.-Dallas 1985, writ ref'd n.r.e); *see also Hall v. Huff*, 957 S.W.2d 90, 101 (Tex.App.-Texarkana 1997, pet. denied).

Nurse Devine's affidavit is clearly satisfactory under Rule 166a(c).

Similarly, the Spinkses claim that Dr. Fitch's affidavit does not meet the requirements of Rule 166a(c), because the affidavit: (1) is not clear and direct; (2) is not readily controvertible; and (3) addresses only the local standard. As with Nurse Devine's affidavit, we hold Dr. Fitch's affidavit meets all of the rule's requirements. *Lopez*, 940 S.W.2d at 235; *see Hickson*, 707 S.W.2d at 925. Both affidavits are uncontradicted, clear, direct and positive, free of circumstances tending to discredit or impeach, and readily controvertible. Tex.R. Civ. P. 166a(c).

## MATERIAL ISSUES OF FACT

■ Because we find the Hospital's affidavits to be in compliance with Rule 166a(c), we now address whether the Hospital met its burden of proof. In order to negate the Hospital's negligence and support a summary judgment, the Hospital's expert testimony must identify the relevant standard of care, establish that the expert is familiar with that standard, and demonstrate that the medical care provided complied with that standard. *Silvas*, 954 S.W.2d at 52. The affidavits of both Nurse Devine and Dr. Fitch describe the respective affiant's qualifications as an expert in the field of medicine, relate the appropriate standard of care with sufficient specificity, and describe how the immediate treatment administered by Nurse Devine complied with this standard of care. These affidavits demonstrate that no material issue of fact exists with regard to the Hospital's alleged breach. The affidavits, alone, or in combination with the deposition testimony offered by the Hospital,[5] are sufficient to shift the burden to

---

5. In their depositions, Drs. Brown, Salzstein, and Sarosdy each indicate that they believe Nurse Devine's actions met the standard of care for a circulator nurse attempting to place a Foley catheter.

the Spinkses. In order to avoid a summary judgment in the Hospital's favor, the Spinkses must produce controverting expert medical testimony, thereby raising a genuine issue of material fact. *See Pinckley v. Gallegos,* 740 S.W.2d 529, 531–32 (Tex.App.-San Antonio 1987, writ denied).

■ In an attempt to raise a genuine issue of material fact, the Spinkses submitted excerpts from the depositions of Nurse Devine, Dr. Brown, Dr. Salzstein, Dr. Stephen Lapin, who treated Spinks in the year following the incident, and Dr. David Mozersky, who performed the vascular procedure. The Spinkses' proof also included selected medical records of Robert Spinks. In order to raise a fact issue, the plaintiffs' expert testimony should: (1) specifically identify the standard of care applicable to the procedure; (2) demonstrate that the expert is familiar with the standard of care and the treatment in question; and (3) thoroughly explain why the treatment rendered breached the applicable standard of care. *Keeton v. Carrasco,* 53 S.W.3d 13, 25 (Tex.App.-San Antonio 2001, pet. denied).

■ The Spinkses failed to introduce any standard of care other than that provided by the Hospital. They also failed to introduce any evidence that Nurse Devine did not follow the standard of care laid out in the Hospital's affidavits. As such, the Spinkses' evidence does not raise a fact issue as to whether Nurse Devine breached the standard of care. Because the Hospital successfully negated its liability on the element of breach, we do not need to reach its evidence regarding causation. We affirm the summary judgment in favor of the Hospital.

### Res Ipsa Loquitur

■ In the alternative, the Spinkses argue that *res ipsa loquitur* should apply in this case. The doctrine of *res ipsa loquitur* is used only in certain limited cases when the circumstances surrounding an incident constitute sufficient circumstantial evidence of a defendant's negligence to support such a finding. *Schorp v. Baptist Mem'l Health Sys.,* 5 S.W.3d 727, 735 (Tex.App.-San Antonio 1999, no pet.). The doctrine of *res ipsa loquitur* only applies when two factors are present: (1) the character of the incident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Id.* (citing *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990)). As a matter of law, the doctrine may apply only "in those cases to which it has been applied by the appellate courts of this state as of" August 29, 1977. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 7.01 (Vernon Supp.2002); *Haddock,* 793 S.W.2d at 950. Following this rule, there are only three situations in which a Texas court may permit an inference of negligence from the type of injury incurred in a medical malpractice case: "negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body." *Haddock,* 793 S.W.2d at 951.

■ The Spinkses argue that the first scenario, negligence in the use of mechanical instruments, is applicable here, and the negligence of the Hospital should therefore be inferred without expert testimony. The Spinkses, however, have overlooked a prerequisite to the application of *res ipsa loquitur.* The doctrine may not be applied in those circumstances where the use of the mechanical instrument is a matter not within the common knowledge of laymen. *Schorp,* 5 S.W.3d at 735 (citing *Haddock,* 793 S.W.2d at 951). In past cases, such as *Schorp* and *Haddock,* courts have found

many medical procedures outside the purview of the layman. For example, in *Schorp*, this Court concluded that the insertion of an arterial line into the radial artery of a plaintiff's left arm and any subsequent corrective action was not within a "juror's common sense." 5 S.W.3d at 735–36. Likewise, in *Haddock*, the Texas Supreme Court held that the use of a flexible colonoscope for a proctological examination was not a matter within the common knowledge of laymen. 793 S.W.2d at 954.

■ In the present case, the Spinkses fail to address the issue of a layman's knowledge of the catheterization procedure. Instead, they rely on the fact that the Hospital's experts describe the procedure of inserting a Foley catheter as routine and not requiring specialized urological training. While the catheterization may be routine to a circulator nurse or an operating surgeon, it is certainly not commonplace for the average juror. In addition, the fact that no specialized urological training is required does not mean that no training is required at all. As such, medical expert testimony is required to aid a fact finder in drawing his conclusions, and the doctrine of *res ipsa loquitur* is clearly inapplicable to the Spinkses' cause of action.

## SUBSTITUTION OF COUNSEL

In their next issue, the Spinkses assert that the trial court abused its discretion in failing to grant their motion to substitute counsel. They argue their motion to substitute was denied solely because of their plans to file for a continuance once the substitution was granted. The Spinkses further assert that denial on this basis is an abuse of the trial court's discretion

because they have a fundamental right to be represented by the counsel of their choice.

■ The decision to grant or deny a request for substitution of counsel is a matter within the discretion of the trial court. *See Cotrone v. Bryan Prod. Credit Ass'n*, 502 S.W.2d 954, 956 (Tex.Civ. App.-Waco 1973, writ ref'd n.r.e.) The court's ruling, therefore, will not be disturbed absent a showing of a clear abuse of discretion. *See id.* Under an abuse of discretion standard, an appellate court may reverse the decision of a trial court only if the trial court's ruling was without reference to any guiding rules or principles. *See Metropolitan Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex.1994) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)).

■ A party has the right to be represented by the counsel of its choice. *Keller Indus., Inc. v. Blanton*, 804 S.W.2d 182, 185 (Tex.App.-Houston [14th Dist.] 1991, orig. proceeding). The right to counsel is a valuable right, and its unwarranted denial is fundamental error. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). There is little published case law regarding a trial judge's abuse of discretion in denying a motion to substitute counsel. The judge's discretion must be balanced against the party's right to be represented by the counsel of its choice.

■ The trial court in the Spinkses' case gave no reason for the denial of the motion to substitute counsel other than the implication [6] that the court was attempting to avoid a delay. There is nothing in the record to indicate the granting of the

---

6. In the order denying the Spinkses' motion to substitute counsel, the trial court mentioned that the Spinkses indicated they would file a motion for continuance should the substitution be permitted.

Spinkses' motion, alone, would have delayed the trial. Although a delay may have been caused by the forthcoming motion for continuance, the motion to substitute was likely to have little effect on the trial date. The continuance was a matter separate from the substitution, and the trial court was free to deny the motion for continuance when and if it was filed. The possibility of a delay resulting from a motion that had yet to be filed does not justify the denial of the Spinkses' motion to substitute counsel. The trial court's decision resulted in an unwarranted denial of the Spinkses' right to be represented by the counsel of their choice. Therefore, the trial court abused its discretion in denying the Spinkses' motion.[7] We sustain the Spinkses' issue on substitution of counsel, reverse the trial court's order denying the motion to substitute, and remand the case for a new trial against Dr. Brown.

### CONCLUSION

We hold that the trial court abused its discretion in denying the Spinkses' motion to substitute counsel. Accordingly, we reverse the trial court's order denying substitution of counsel. We also reverse the trial court's judgment in favor of Dr. Brown and remand for a new trial. However, considering the totality of the summary judgment evidence submitted, we affirm the summary judgment in favor of the Hospital.

7. Dr. Brown also asserts that the Spinkses waived their right to complain about the trial court's ruling on the motion for substitution of counsel by announcing ready for trial. This rule of waiver generally applies to situations in which a party files a motion for continuance, has the motion denied, and then announces ready for trial. *See, e.g. Rangel v. State Bar of Texas,* 898 S.W.2d 1 (Tex.App.-San Antonio 1995, no writ). We fail to see a compelling reason for extending this rule to situations involving motions to substitute counsel. The Spinkses did not waive their right to appeal this issue.