**Opinion issued August 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00504-CV

————————————

**SANDRA PEREZ, Appellant**

**V.**

**BRIAN WILLIAMS, Appellee**

---

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-05419**

---

## O P I N I O N

Appellant, Sandra Perez, alleged that she had a common-law, or informal, marriage with appellee, Brian Williams. Perez and Williams also have a minor child, E.A.W., over whom both parents sought custody. The trial court ruled, via Williams's motion for summary judgment, that no informal marriage existed.

Following a bench trial, the trial court named Perez and Williams joint managing conservators of E.A.W. and granted Williams the exclusive right to designate E.A.W.'s primary residence.

In seven issues, Perez argues that the trial court erred: (1) in granting Williams's motion for summary judgment determining that no informal marriage existed; (2) in denying her mid-trial motion to substitute legal counsel; (3) in refusing to take judicial notice of copies of court documents filed in judicial proceedings related to Williams's custody dispute over his three children from a previous relationship; (4) in refusing to award her a vehicle that she asserts was a gift from Williams; (5) in sustaining Williams's objection to four photographs that she sought to admit into evidence; (6) in sustaining Williams's objection to her questioning regarding whether he had seen a psychologist; and (7) in "failing to award [her] primary conservatorship rights" to E.A.W. or, alternatively, in failing to award her visitation pursuant to a standard possession order.

We affirm.

## Background

Perez and Williams began living together in May 2010. At that time, Perez was still married to Miguel Perez, and Williams had divorced his ex-wife, Devinah Finn, in 2009. Both Perez and Williams had children from previous relationships.

Perez's divorce from her previous husband became final on November 3, 2010. E.A.W., the child of Perez and Williams, was born on October 12, 2011.

On January 29, 2013, Williams filed his original petition in a Suit Affecting the Parent-Child Relationship ("SAPCR") seeking to be named sole managing conservator of E.A.W. and asking that Perez be ordered to pay child support to him.

On March 1, 2013, Perez filed her original answer and counter-petition for divorce, alleging that an informal marriage existed between Williams and herself and seeking a disproportionate division of the resulting community estate. She alleged that she and Williams "were married on or about June 2010 and have ceased to live together as man and wife" and that they were the parents of E.A.W. She also sought to be named E.A.W.'s sole managing conservator.

On October 7, 2013, Williams moved for partial traditional and no-evidence summary judgment asserting that no genuine issue of material fact existed as to whether he should be adjudicated the father of E.A.W. Williams also asserted traditional and no-evidence grounds for summary judgment on the issue of informal marriage.

On December 4, 2013, Perez filed her "Original Answer to Partial Traditional and No-Evidence Summary Judgment." She argued that both she and Williams were married to other people when they first started their relationship,

they both divorced their respective spouses in 2010, they began cohabitating on May 3, 2010, and E.A.W. was born on October 12, 2011. Perez argued that a fact question existed as to whether the parties were informally married beginning in January 2011, after her divorce from Perez was finalized. She supported her response with her own affidavit, her 2010 divorce decree, E.A.W.'s birth certificate listing Williams as the father, a copy of a document in which Williams listed her as his "relative for contact purposes," copies of greeting cards calling her "wife," and photographs of her "wedding rings."

On December 5, 2013, the day after Perez filed her response, the trial court held the summary judgment hearing. On December 13, 2013, "[a]fter considering the motion and evidence submitted," the trial court granted Williams's motion for partial summary judgment. It adjudicated Williams to be E.A.W.'s father, stated that Williams and Perez "are found and declared not to be married," and dismissed the issues of marriage and division of community property from the suit.

The parties tried the remaining issues of conservatorship of E.A.W., visitation, and child support to the bench on February 6, 2014, and, following a continuance to address problems with the translator, on March 28, 2014. On February 6, 2014, Perez was represented by attorneys Mark Lipkin and Diane Perez. Williams, who was likewise represented by counsel, testified that he had three children with his ex-wife, Finn, and one child, E.A.W., with Perez. He had

4

earned an MBA from Harvard Business School and worked as an investment banker until "early 2013" when he started his own oil-field service business so that he would have more time to spend with his family.

Williams testified that he had been E.A.W.'s primary caregiver, had taken her to her doctor's appointments, and had provided for her basic care and support. He stated that he had had exclusive care of E.A.W. since September 2013, when Perez moved out of his house, "but even for the year-and-a-half prior to that she was an absentee, inactive mother." Williams testified that Perez was "active during breastfeeding for a little bit and would be there, you know, a couple of hours during the evenings, but she would run off to work and come back late at night." He testified that he was the one who changed E.A.W.'s diapers, prepared her meals, and provided other care.

Regarding his relationship with Perez, Williams testified that he invited her and her two teenaged sons to move in with him in spring 2010. He testified that Perez's oldest child, who was eighteen at the time of the trial, had been physically violent toward him on multiple occasions and ultimately "had to leave the house" in the fall of 2012. Williams also stated that Perez had hit, pushed, or shoved him on "numerous occasions." He testified that he never sustained any injuries requiring hospitalization because he was much larger than Perez, but she was frequently violent. He testified specifically about an incident in December 2010 in

5

which Perez "came at [him] with a knife" which resulted in a call to the police and in Perez being charged with deadly conduct. He also testified about an incident that occurred on Christmas Eve of 2012. Perez "became very violent in front of my three older kids, . . . picked up a Christmas tree, threw it over. Started punching and punching me as I stood between her and [E.A.W.] as she was threatening to run out of the house with the baby." Williams stated that, at that point, he decided to ask Perez to leave his house and to file the underlying lawsuit. Williams testified that he had never hit Perez or hurt her. However, she had threatened to "make those allegations against him" and to "hurt herself and blame it on [Williams]" and had followed through on those threats.

Williams testified that he filed the present suit one month after the Christmas Eve incident, in January 2013. He also asked Perez to leave his home multiple times, but she kept returning periodically. He eventually changed the locks in September 2013. He also testified that he provided Perez with money to use toward a deposit on an apartment so that she would have somewhere else to go.

Regarding Perez's relationship with E.A.W., Williams testified that he believed Perez loved E.A.W. However, he had also observed Perez "smack the baby in the face" for being "too fussy" and because Perez believed the child had "to learn to respect [Perez]." He stated that Perez had threatened to take the baby to live in the Dominican Republic, where Perez was born and where she still had

6

family members residing. He also testified about an occasion when Perez became violent with one of her sons from her previous relationship, and he introduced an audio recording supporting his testimony.

Williams also testified regarding Perez's employment. Williams purchased a hair salon for Perez, and she operated it from "early 2010" on for the next several years. Perez told Williams that she "rent[ed] out rooms in the back where people would provide massages and sexual services" and that she "was selling stolen items, clothing and other items in a little boutique she built in one of the massage rooms." He also testified that Perez had indicated that drug deals had occurred at her salon on two occasions. Williams introduced copies of internet advertisements for massage services and "adult entertainment" showing Perez in revealing clothing. Williams testified that he discovered the advertisements in May 2013 by searching phone numbers from Perez's cell phone after he became "increasingly concerned by [Perez's] behavior and complete absence from [E.A.W.'s] life. . . ." The trial court also admitted Perez's "entertainer license" issued by "HPD Vice Division," which Perez had told Williams she needed to work in adult entertainment. Williams testified that he knew Perez was involved on the "periphery" of sexually-oriented business, but he did not know that she herself was involved in it until after he filed the underlying suit.

Perez testified at trial that her relationship with Williams started out well, but problems began to arise around the time she got pregnant with E.A.W. Perez stated that Williams "never wanted the child" and encouraged her to get an abortion. Perez also testified regarding her employment. She stated that she still owned the salon and that she knew at one point a "young lady . . . was doing massages to lose weight" at her salon, which Perez believed was illegal because the woman did not have a license. Perez testified that she asked the woman to leave.

Perez testified that when she left Williams's home she took the Range Rover that he had given her to drive. She drove the vehicle until Williams eventually sent police to recover it, at which time she returned it to Williams's residence.

Perez further stated that she attempted to visit E.A.W. "many times" after Williams locked her out of his home, but he would not let her see her daughter. Perez testified regarding an incident that had happened the day after Williams changed the locks in September 2013, when she "went with the police" but was refused entry by the neighborhood security.

The trial on the merits was then recessed "[b]ecause of translator problems." Trial resumed on March 28, 2014. Attorney David Altenbern appeared on Perez's behalf, along with her attorneys from the first day of trial, Lipkin and Diane Perez. On the record in open court, Altenbern asked the trial court to grant Perez's motion

to substitute him as her lead counsel. Williams's counsel objected on multiple grounds, including that he had not been served with notice of the motion, and the trial court ultimately denied Perez's request to substitute Altenbern as lead counsel but allowed him to appear as co-counsel.

Perez then continued her testimony with her attorney, Lipkin, questioning her. Perez testified that she had no history of psychiatric treatment, no criminal history, and no history of substance abuse or illegal drug use. Perez also testified that there were no restrictions on her custody or visitation with her other minor child—her son from her previous relationship—and that she believed she had "always taken care of [her] children." She also stated that if she were awarded custody of E.A.W., she would be able to provide for her care, that she would abide by the trial court's visitation orders, and that she would allow Williams access to the child.

Perez testified that Williams had been violent with her on numerous occasions. She testified that, in one instance, Williams struck her on the arm, and she offered into evidence photographs "of what happened on that day," but the trial court refused to admit them into evidence after Williams objected on the basis that Perez had not produced the photographs during discovery. Perez further acknowledged that Williams had never been arrested based on her allegations of

violence. She acknowledged that she had been arrested, but not convicted, for attacking Williams.

Perez testified that she had last seen Williams's three children with Finn on December 24, 2012. She also testified that Williams had told her that he had supervised visitation with his three children and that he had to see a psychologist. On cross-examination, she conceded that she had not seen any court orders from his custody dispute with Finn and that Williams told her that the visitation and family counseling arrangements were part of an agreement he had reached with Finn. Perez admitted that she had met with Finn and Finn's lawyers and that Finn's lawyers had offered her "money in this case to prolong it to affect that case" but she did not accept it.

Perez asked the trial court to take judicial notice of two motions and a Rule 11 Agreement filed in Williams's custody proceeding regarding his three children with Finn. Williams objected on multiple grounds, including that Perez had not provided certified copies of the documents to the trial court in making her request, and the trial court sustained the objection. However, the trial court allowed Perez to recall Williams to testify on these issues.[1] Williams testified that his visitation with his and Finn's children was governed by his 2009 divorce decree, that he picked his children up at Finn's house pursuant to that decree, that it was

---

[1] The trial court also permitted Altenbern to conduct Williams's questioning.

"incorrect" that his visitation with his children was required to be supervised, and that he had never been required to pick his children up at a psychologist's office. Perez's attorney asked multiple other questions regarding Williams's custody arrangements with Finn and regarding documents filed in that custody dispute, including, "Have you seen a psychologist?" Williams's counsel objected on multiple bases, and the trial court sustained the objection. However, Williams acknowledged that he entered into a Rule 11 Agreement with Finn, and he briefly described the content and purpose of that agreement on the record.

On April 25, 2014, the trial court signed its order incorporating the previous summary judgment ruling that Williams was adjudicated to be E.A.W.'s father and that Williams and Perez were never married. The trial court declared Williams and Perez joint managing conservators of E.A.W., with Williams receiving the exclusive right to designate E.A.W.'s primary residence. Perez was granted periods of visitation that were ordered to increase gradually until her visitation schedule conformed with a standard possession order by April 1, 2015. The trial court also ordered Perez to pay Williams child support in the amount of $195.69 per month until October 30, 2018, at which time her monthly payments would

increase to $223.64. Williams and Perez both signed the order under a heading that provided that it was approved as to form and substance.[2]

Perez filed a motion for new trial complaining of various trial court rulings before and during trial. The trial court denied the motion for new trial and this appeal followed.

## Summary Judgment on Informal Marriage Claim

In her first issue, Perez argues that the trial court erred in granting summary judgment on the issue of informal marriage. Williams argues that the trial court did not err in granting summary judgment on this issue. Among other grounds, Williams asserts that the trial court properly granted his no-evidence motion for summary judgment on this issue because Perez failed to file a timely response.

---

[2] In his brief, Williams argues that this statement makes the trial court's order an agreed order and, thus, Perez cannot complain on appeal of any of its provisions. However, for a judgment to be considered an agreed or consent judgment, such that no appeal can be taken from it, either the body of the judgment itself or the record must indicate that the parties came to some agreement as to the case's disposition; simple approval of the form and substance of the judgment does not suffice. *See, e.g.*, *DeClaris Assoc. v. McCoy Workplace Solutions, L.P.*, 331 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Oryx Energy Co. v. Union Nat'l Bank of Tex.*, 895 S.W.2d 409, 417 (Tex. App.—San Antonio 1995, writ denied) (holding that order, despite notation that it was "Approved and Agreed," was not agreed order when "nothing in the record or the judgment indicates that the parties entered or even contemplated a settlement or agreed judgment"). Each party must explicitly and unmistakably give its consent for a consent judgment to be valid. *Chang v. Nguyen*, 81 S.W.3d 314, 318 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (stating that, for instance, body of judgment must suggest that case had been settled or that judgment was rendered by consent). No such agreement is evident in this case.

## A. Facts Relevant to Summary Judgment on Informal Marriage

Williams moved for summary judgment on October 7, 2013, arguing, in relevant part, that he was entitled to no-evidence summary judgment on the issue of informal marriage because Perez could provide no evidence that they had agreed to be married or that they had a reputation in the community for being married. One day before the hearing on Williams's summary judgment motion, Perez filed her response and supporting evidence. The record does not contain any indication that Perez sought leave to file her response late or that she sought a continuance of the summary judgment hearing. The trial court stated in its order granting Williams's partial summary judgment motion that it considered "the motion and evidence submitted."

## B. Standard of Review

The party moving for no-evidence summary judgment must specifically state the elements as to which there is no evidence. *See* TEX. R. CIV. P. 166a(i). The burden then shifts to the nonmovant to produce evidence raising a fact issue on the challenged elements. *Id.* The reviewing court must view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). The trial court must grant the no-evidence summary judgment unless the respondent brings forth more than a scintilla of probative evidence to raise a

genuine issue of material fact. TEX. R. CIV. P. 166a(i); *see King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

A trial court need only consider the record as it properly appears before it when the motion for summary judgment is heard. *Billelo v. Techline Servs., L.P.*, 372 S.W.3d 232, 235 (Tex. App.—Dallas 2012, no pet.) (citing *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 721 (Tex. App.—Dallas 1995, no writ)); *Marek v. Tomoco Equip. Co.*, 738 S.W.2d 710, 712 (Tex. App.—Houston [14th Dist.] 1987, no writ). The nonmovant must file its summary judgment response and evidence at least seven days before the summary judgment hearing, unless the nonmovant gets permission to file it later. TEX. R. CIV. P. 166a(c). If the court allows the late filing of evidence, the court must affirmatively indicate in the record acceptance of the late filing. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996); *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 n.1 (Tex. 1988); *WTFO, Inc.*, 899 S.W.2d at 721. Absent any indication leave was granted, we must presume the trial court did not consider the late-filed evidence. *See Fertic v. Spencer*, 247 S.W.3d 250–51 (Tex. App.—El Paso 2007, pet. denied); *see also Benchmark Bank*, 919 S.W.2d at 663; *WTFO, Inc.*, 899 S.W.2d at 721.

Furthermore, the summary judgment rules afford a party who did not have adequate time an opportunity to obtain additional time to file a response, either by moving for leave to file a late response or by requesting a continuance of the

14

summary-judgment hearing. TEX. R. CIV. P. 166a(c); *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685 (Tex. 2002) (discussing remedies available for summary judgment nonmovants who have inadequate time to respond to summary judgment motion and stating that trial court's ruling on motions for leave to late-file response or for continuance of hearing are reviewed for abuse of discretion).

## C.    Analysis

Williams moved for summary judgment in part on the basis that Perez could present no evidence that they had agreed to be married or had represented to others that they were married. *See* TEX. FAM. CODE ANN. § 2.401(a)(2) (Vernon 2006) (providing that informal marriage exists if parties (1) agreed to be married, (2) lived together in Texas as husband and wife after such agreement, and (3) represented to others that they were married). Thus, the burden shifted to Perez to produce summary judgment evidence raising a genuine issue of material fact on these elements. *See* TEX. R. CIV. P. 166a(i). Perez filed a response the day before the summary judgment hearing; thus, her response was untimely. *See* TEX. R. CIV. P. 166a(c). Perez failed to move for leave to late-file her response or for a continuance of the summary judgment hearing. Perez did not present any explanation, either at trial or on appeal, for her failure to file a timely response to Williams's motion for summary judgment. Nor does it appear that the trial court

considered Perez's late-filed response—the trial court's partial summary judgment order reflected that it considered only "the motion and evidence submitted" in granting summary judgment on Williams's paternity of E.A.W. and Perez's informal marriage claim.

Because nothing in the record indicates that the trial court granted leave for Perez to file her response late, we presume that the trial court did not consider it, and we likewise do not consider it on appeal. *See Fertic*, 247 S.W.3d at 250–51 (holding that appellate court would not consider plaintiff's motion for partial summary judgment filed in response to defendant's no-evidence motion for summary judgment because, even if it construed plaintiff's motion as response, it was not timely filed and court presumed that trial court did not consider it); *Johnston v. Vilardi*, 817 S.W.2d 794, 796 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (holding that appellant's untimely amended response to motion for summary judgment could not be considered); *cf. Carpenter*, 98 S.W.3d at 687–88 (holding that trial court did not abuse its discretion in denying motion for leave to file late response because party offered no explanation for its failure to timely respond).

Thus, although Perez argues that genuine issues of material fact remain on all elements of her informal marriage claim, she failed to demonstrate that the record before the trial court contained any such evidence at the time the court

heard Williams's motion for summary judgment. *See Billelo*, 372 S.W.3d at 235. Accordingly, Perez failed to meet her burden to produce summary judgment evidence raising a genuine issue of material fact on these elements. *See* TEX. R. CIV. P. 166a(i). We conclude that the trial court did not err in granting summary judgment in favor of Williams on Perez's informal marriage claim. *See id.*

We overrule Perez's first issue.

## Motion to Substitute Legal Counsel

In her second issue, Perez argues that the trial court erred in denying her motion to substitute legal counsel following a continuance of the trial on the merits. Perez argues that the trial court's denial of her motion to substitute counsel violated her fundamental right to counsel of her own choosing.

## A.    Facts Relevant to the Motion to Substitute Legal Counsel

On the second day of trial, Perez requested that the trial court grant her motion to substitute new counsel, Altenbern. However, the trial court stated that it had not received a motion for substitution and saw only Altenbern's notice of entry of appearance. Altenbern informed the trial court that the motion to substitute had been electronically filed earlier that same day, and he asserted Perez's right to have counsel of her choosing represent her at trial.

Williams's counsel opposed the motion to substitute, arguing that it was "completely a surprise" and a "trial tactic" to attempt to substitute new counsel

with approximately an hour of trial remaining. He also argued that the motion to substitute was untimely and not properly noticed and that Perez's first attorney had already begun questioning her and no other witnesses had been designated, so "[t]here [was] no functional ability for [Altenbern] to take over and examine any witness" under the "one witness, one lawyer rule." The trial court denied Altenbern's motion to substitute, stating it was concerned that opposing counsel did not have notice of the motion.

Neither the notice of Altenbern's appearance on Perez's behalf nor the motion to substitute is included in the clerk's record on appeal. Nor does it appear from the record that Perez's first attorneys, Lipkin and Diane Perez, sought to withdraw or were unable to adequately represent Perez at trial.

## B.    Standard of Review

We review a trial court's decision to grant or deny a motion to substitute counsel for an abuse of discretion. *Spinks v. Brown*, 103 S.W.3d 452, 459 (Tex. App.—San Antonio 2002, pet. denied). "Under an abuse of discretion standard, an appellate court may reverse the decision of a trial court only if the trial court's ruling was without reference to any guiding rules or principles." *Id.*; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

While a party has the right to be represented by counsel of its own choice, that right is not absolute. *See Spinks*, 103 S.W.3d at 459. The Rules of Civil

Procedure provide that designations of new lead counsel and motions to withdraw and substitute new counsel must be made in writing and that the party designating new counsel or substituting a new attorney must serve notice on the court and all other parties. *See* TEX. R. CIV. P. 8, 10.

## C. Analysis

Although Perez argues on appeal that she filed a written notice of Altenbern's appearance as her counsel and a written motion to substitute him as lead counsel, neither document appears in the record. The reporter's record reflects that Altenbern requested to be substituted as lead counsel for Perez in open court at the beginning of the second day of trial. The trial court stated on the record that it had not received a written motion to substitute, and Williams objected on the basis that he had not received notice of the substitution. The trial court sustained this objection and denied Altenbern's request.

Because the record does not demonstrate that Perez filed a written motion or notice to the trial court and all other parties, we cannot conclude that the trial court abused its discretion in denying Perez's oral request, made on the record mid-trial, to substitute new lead counsel. *See* TEX. R. CIV. P. 8, 10; *Spinks*, 103 S.W.3d at 459.

We overrule Perez's second issue.

**Evidentiary Issues**

In her third, fifth, and sixth issues, Perez argues that the trial court erred in making various evidentiary rulings.

## A. Standard of Review

"Evidentiary rulings are committed to the trial court's sound discretion." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion if it acts without regard for guiding rules or principles. *Id.* To show the trial court abused its discretion, an appellant must demonstrate that: (1) the court erred in not admitting the evidence; (2) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case. *Jones v. Pesak Bros. Constr., Inc.*, 416 S.W.3d 618, 632 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing TEX. R. APP. P. 44.1(a), and *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)). We uphold the trial court's evidentiary ruling if we discern a legitimate basis for it. *Id.* (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)).

## B. Court Documents

In her third issue, Perez argues that the trial court erred in refusing to admit copies of court documents relating to Williams's other judicial proceedings

"pursuant to the doctrine of judicial notice." She argues that the documents were relevant to the conservatorship proceedings and to E.A.W.'s best interests.

Perez asked the trial court to take judicial notice of two motions and two copies of a Rule 11 Agreement—one handwritten draft and one typed final agreement—filed in connection with Williams's custody dispute with Finn. In making her request for the trial court to take judicial notice, her attorney stated that "certified copies are on the way, and I want . . . judicial notice taken in this case." Williams objected, arguing

> [the documents are] not a proper subject matter for the judicial notice. He's required to provide the documents at the time he requests judicial notice. Additionally, all of the motions are not by—by operation of law evidence of anything. They are requests and allegations subject to verification. So, I would object, one: Improper verification; two: Improper presentation in this proceeding; three: Not evidence, as a matter of law.

The trial court confirmed that none of the proffered documents were final orders, but rather were motions and a Rule 11 Agreement, and it sustained Williams's objection.

However, Williams subsequently testified regarding some of the documents, including the Rule 11 Agreement with Finn. He stated that the purpose of the agreement was

> to see my children that my ex-wife has kept from me for over a year because of the actions of Ms. Perez at Christmas last year, sir. And it was so I could see my kids for one day at Christmas at the museum.

21

> And I agreed that I would take my kids and my ex-wife and me to individual assessments with [a psychologist].

Perez subsequently asked to include the documents in the record as part of a bill of exceptions, and the trial court admitted the documents for that purpose. The documents that appear in the record are not certified—they contain only a file stamp from the Harris County Clerk's Office.

To be the proper subject of judicial notice, an adjudicative fact must be "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b); *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012). Judicial notice is mandatory if a party makes the request and supplies the court with the necessary information. See TEX. R. EVID. 201(c)(2); *Coronado*, 372 S.W.3d at 623; *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 484 n.7 (Tex. 2010). "Under this standard, a court will take judicial notice of another court's records if a party provides proof of the records." *Coronado*, 372 S.W.3d at 623 (citing *Hinton*, 329 S.W.3d at 497 n.21, and *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 459 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). The contents of an unauthenticated or uncertified record from another court are not the type of evidence of which the court can take judicial notice. *Ex parte Luan Le*, No. 05-12-00248-CV, 2013 WL 2725593, at *4 (Tex. App.—Dallas June 12, 2013, no

pet.) (mem. op.); *see also Ex parte Wilson*, 224 S.W.3d 860, 863 (Tex. App.—Texarkana 2007, no pet.) ("Judicial records . . . from a domestic court other than the court being asked to take judicial notice have not been deemed so easily ascertainable that no proof is required; they are to be established by introducing into evidence authenticated or certified copies . . . of those records.").

Furthermore, "while the trial court can take judicial notice of the existence of certain documents in its records, it 'may not take judicial notice of the truth of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file.'" *Kenny v. Portfolio Recovery Assocs., LLC*, —S.W.3d—, No. 01–14–00058–CV, 2015 WL 1135410, at *3 (Tex. App.—Houston [1st Dist.] Mar. 12, 2015, no pet.) (citing *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.)).

A trial court's erroneous decision whether to take judicial notice of requested facts is subject to a harm analysis under Rule of Appellate Procedure 44.1(a). *See* TEX. R. APP. P. 44.1(a); *In re Estate of Downing*, 461 S.W.3d 231, 239 (Tex. App.—El Paso 2015, no pet.). Thus, we may not reverse the judgment of the trial court on this issue unless we conclude that the trial court erred and that the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a).

Here, the trial court denied Perez's request to take judicial notice of two motions and a Rule 11 Agreement filed in another court in conjunction with Williams's custody dispute with Finn. However, the record reflects that Perez did not provide the trial court with certified copies of the documents at the time she requested that the court take judicial notice. Rather, her attorney stated on the record that the certified copies of the documents were "on the way," and the copies provided in her bill of exceptions were likewise not certified. Under these circumstances, we cannot conclude that the trial court erred in refusing to take judicial notice of the motions and Rule 11 Agreement filed in that other case. *See Ex parte Luan Le*, 2013 WL 2725593, at *4 ("[T]he contents of an unauthenticated or uncertified record from another court is not the type of evidence of which the court can take judicial notice.").

Moreover, even if we determined that the trial court had erred in refusing to take judicial notice of those documents, Perez cannot show that any such error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *In re Estate of Downing*, 461 S.W.3d at 239. The trial court could only have taken judicial notice of the existence of the documents—it could not have taken judicial notice of the truth of any factual statements or allegations contained in those documents. *See Kenny*, 2015 WL 1135410, at *3. The existence of the motions or Rule 11 Agreement filed in Williams's custody dispute with Finn is not

relevant to issues of E.A.W.'s conservatorship or support. Furthermore, the trial court permitted Perez to question Williams regarding his custody dispute with his ex-wife, and he testified on the record regarding the purpose and content of the Rule 11 Agreement.

We overrule Perez's third issue.

## C.     Photographs

In her fifth issue, Perez argues that the trial court erred in excluding photographs depicting bruising that she alleges she received from Williams.

Perez testified regarding one occasion when Williams struck her and offered the photographs as evidence "of what happened on that day." Williams objected that she had laid an improper foundation for the photographs and that she had not produced the photos in discovery responses in spite of their having been requested. The trial court asked Perez's counsel whether they had been produced, and he responded, "I can't tell you. I didn't do the discovery, honestly." The trial court sustained Williams's objection.

The Rules of Civil Procedure provide:

A party who failed to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence that material or information that was not timely disclosed . . . unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

25

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). The party seeking to introduce the evidence bears the burden of establishing good cause or lack of unfair surprise or unfair prejudice. TEX. R. CIV. P. 193.6(b).

After Perez proffered the photographs, Williams's attorney objected on the basis that although he had requested the photographs during discovery, Perez had not produced them. Perez offered no explanation of her failure to produce the photographs during discovery. Her counsel stated that he "didn't do the discovery" in this case. Thus, Perez failed to meet her burden under Rule of Civil Procedure 193.6(b). *See Carpenter*, 98 S.W.3d at 687 (citing predecessor rule to Rule 193.6 and holding that inadvertent failure to supplement responses was insufficient to establish good cause, even if admitting evidence would not be unfair to opposing party) (citing *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 672 (Tex. 1990)).

We cannot conclude that the trial court abused its discretion in excluding the photographs from evidence. *See In re T.K.D.-H.*, 439 S.W.3d 473, 480 & n.4 (Tex. App.—San Antonio 2014, no pet.) (holding that trial court did not abuse its discretion where proponent failed to produce photographs in discovery and failed to provide good cause for admitting photographs).

We overrule Perez's fifth issue.

26

## D.    Questioning

In her sixth issue, Perez argues that the trial court erred in sustaining Williams's objection to her question, "Have you seen a psychologist?"

Perez asked Williams multiple questions about his custody dispute with Finn, including, "Have you seen a psychologist?" Williams's attorney objected to this question, arguing, "There's no motion on file by them to request any kind of psychiatric care or examination." The trial court sustained the objection. Perez's attorney argued that evidence of Williams's mental health, including whether and why he had seen a psychologist, was relevant. Williams's attorney responded that the question was "an impermissible attempt to get in the hearsay . . . [and] impermissible filings and the motions in the other case." He also asserted that the question was improper because Perez had not filed any pleadings challenging Williams's mental health or seeking to require Williams to participate in counseling or mental health treatment. The trial court again sustained Williams's objection. Williams did not answer the question, and Perez did not make an offer of proof regarding what information she had expected to elicit from Williams on this issue. However, Williams acknowledged that, as part his Rule 11 Agreement with Finn, he "would take my kids and my ex-wife and me to individual assessments with [a psychologist]."

Perez cannot show that the excluded testimony was controlling on a material issue dispositive of the case and was not cumulative or that the trial court's ruling probably caused the rendition of an improper judgment. *See Jones*, 416 S.W.3d at 632. Perez failed to make an offer of proof, so the record does not reflect what Williams's testimony on this topic would have been. *See Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) ("The failure to make an offer of proof containing a summary of the excluded witness's intended testimony waives any complaint about the exclusion of the evidence on appeal."). Williams testified regarding his agreement with his ex-wife to attend family counseling, but he did not indicate whether he had actually begun the counseling. Thus, Perez failed to establish that Williams's excluded testimony would have been material to issues of custody and support of E.A.W. and that its exclusion probably caused the rendition of an improper judgment, as required to demonstrate that the trial court abused its discretion. *See Jones*, 416 S.W.3d at 632.

Thus, we cannot conclude that the trial court abused its discretion in sustaining Williams's objection to this question. *See Waldrip*, 380 S.W.3d at 132.

We overrule Perez's sixth issue.

## Gift of Vehicle

In her fourth issue, Perez argues that the trial court erred in "refusing to determine that a gift existed for an award of a Range Rover motor vehicle." Perez argues that she testified that Williams intended that the Range Rover be a gift to her and that Williams failed to provide any evidence contradicting her testimony.

Perez testified that after Williams asked her to leave his home, she took the Range Rover with her. She stated that she had driven the car for three years until Williams "sent for the car to be taken away from [her]." Perez testified that she believed the Range Rover belonged to her. Williams's counsel objected to this testimony on relevance grounds and asserted that "[c]ar titles control ownership. . . . It's . . . not relevant what she thought." The trial court sustained this objection. Williams's counsel also objected to further questioning regarding ownership of the Range Rover, arguing that there were no property issues remaining to be resolved in the trial because "[t]he divorce [issue] has already been ruled on" and "there's no suit for conversion or anything else."

Perez's counsel asserted that Perez's testimony about the vehicle "doesn't have anything to do with property and property rights, but it has to do with how Mr. Williams treated her and allowed her to take care of her son [from her previous relationship]." The trial court overruled Williams's objection and allowed Perez to testify that Williams sent police to "take [the vehicle] away" and left her with no

other way to transport her son from a previous relationship except to use a taxi. Perez testified, "[Williams] gave a Range Rover to me. . . . He told me that it was a present, that it was mine." She acknowledged that Williams had asked her to return the Range Rover multiple times and had sent a certified letter requesting its return before he sent the police to collect the vehicle. The trial court also admitted into evidence the title to the Range Rover, listing Williams as the owner. Perez acknowledged that she was not listed as the owner of the vehicle.

The record demonstrates that the Range Rover's ownership was not at issue during the bench trial. The trial court granted Williams's partial motion for summary judgment, ruling that the parties were never married and dismissing the issues of divorce and property division from the case. We have overruled Perez's complaints regarding this order. Perez did not file any other pleadings that might be construed as seeking a determination of ownership of the vehicle. *See* TEX. R. CIV. P. 301 (providing that judgment must conform to pleadings).

Furthermore, when the question of whether the Range Rover was a gift from Williams to Perez arose at trial, Williams objected to Perez's testimony on the ground that she had not sought an adjudication of her entitlement to the Range Rover in any of her pleadings. He also objected on the basis that the title speaks for itself and establishes that Williams was the sole owner of the vehicle. Perez's counsel then argued that the testimony was not intended to establish a property

30

right but to show how Williams treated her. Thus, the issue was not tried by consent. *See Reed v. Wright*, 155 S.W.3d 666, 670 (Tex. App.—Texarkana 2005, pet. denied) (holding that trial by consent applies in exceptional cases when record as whole clearly demonstrates that parties tried unpled issue); *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.) (stating that to determine whether issue was tried by consent, appellate court must examine record for evidence of trial of issue).

We cannot conclude that the trial court erred in failing to grant relief that Perez never requested.

We overrule Perez's fourth issue.

## Conservatorship of E.A.W.

In her seventh issue, Perez argues that the trial court erred in "awarding primary conservatorship rights" to Williams. Because the trial court made Perez and Williams joint managing conservators of E.A.W., we construe this as an argument that the trial court abused its discretion by granting Williams the exclusive right to determine E.A.W.'s primary residence. In the alternative, Perez argues that the trial court erred in awarding her less-than-standard visitation.

## A.    Standard of Review

Trial courts have wide discretion to determine a child's best interest, including issues of custody, control, possession, and visitation. *Gillespie v.*

*Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Thus, we will reverse a trial court's determination of conservatorship only if a review of the entire record reveals that the trial court's decision was arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Patterson v. Brist*, 236 S.W.3d 238, 239–40 (Tex. App.—Houston [1st Dist.] 2006, pet dism'd). A trial court does not abuse its discretion "as long as some evidence of a substantive and probative character exists to support [its] decision." *In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.— Fort Worth 2005, no pet.). We must view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Holley*, 864 S.W.2d at 706.

When, as here, there are no findings of fact or conclusions of law, we "presume that all factual disputes were resolved in favor of the trial court's ruling." *Aduli v. Aduli*, 368 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Thus, we uphold the trial court's ruling unless "it is so contrary to the overwhelming weight of the evidence as to be wrong and unjust." *Id.* at 814; *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

## B.   Conservatorship Determination

Perez argues that she had no psychological or substance abuse problems and, thus, there is no evidence supporting the trial court's determination awarding

Williams the exclusive right to designate E.A.W.'s primary residence. Even considering that evidence, we cannot conclude that the trial court abused its discretion.

Viewing the evidence in the light most favorable to the trial court's decision and indulging every legal presumption in favor of its judgment, as we must, we conclude that the trial court's ruling is not so contrary to the overwhelming weight of the evidence as to be wrong and unjust. *See Holley,* 864 S.W.2d at 706; *Aduli*, 368 S.W.3d at 813. Williams and Perez both testified regarding their interactions with each other and with E.A.W., their respective employment, and their home environments.

Williams testified that he had regular employment, stable housing, and reliable transportation. Williams also testified that he had been E.A.W.'s primary caregiver since she was born and that he had been her exclusive caregiver since September 2013. Williams stated that he was a former investment banker who had started a new career so that he would have more time for his family. He testified about numerous instances in which Perez became violent with him or one of her children, including E.A.W. Williams also testified that since he and Perez had ended their romantic relationship Perez had advertised on "adult entertainment" websites, and he provided copies of those advertisements to the trial court. Perez

did not contradict this evidence. Perez also acknowledged that she had been arrested for assaulting Williams.

We conclude that the trial court's decision to grant Williams the exclusive right to determine E.A.W.'s residence was supported by "some evidence of a substantive and probative character." *See In re W.M.*, 172 S.W.3d at 725. Thus, the trial court's conservatorship determination was not arbitrary or unreasonable and did not constitute an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d at 616.

## C. Visitation

Perez also argues that, even if we affirm the trial court's conservatorship determination, the trial court erred in not granting her visitation pursuant to a standard possession order. However, we observe that the trial court's order provides that Perez is to have visitation with E.A.W. pursuant to a standard possession order as of April 1, 2015. Thus, this complaint is now moot. *See In re H & R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) ("An issue may become moot when a party seeks a ruling on some matter which, when rendered, would not have any practical legal effect on a then-existing controversy.").

We overrule Perez's seventh issue.

## Conclusion

We affirm the order of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.