**Opinion issued December 8, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-16-00295-CV**

————————————

**IN RE M.F.D.**

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2015-14381

**MEMORANDUM OPINION**

Father appealed an order terminating Father's parental rights to M.F.D., a minor child. After this Court issued an opinion affirming the trial court's order, Father filed a motion for rehearing. The panel denies the motion for rehearing, withdraws its September 22, 2016 opinion and judgment, and issues this opinion and judgment affirming the trial court's termination order in its place.

# BACKGROUND

On March 12, 2015, the Department of Family and Protective Services (the Department), filed an Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. Appellant-Father was identified as the alleged father in the original petition, and was confirmed as the biological father through DNA testing on August 19, 2015.

The affidavit in support of removal indicated that, on March 8, 2015, Mother had abandoned M.F.D., a two-month-old baby, with someone Mother had met the previous night. She was supposed to return for the baby after one or two hours; the people with whom she left the baby called the police when Mother had not returned in 24 hours. Mother had a history of abandoning another child in 2010, and of prostitution, drug abuse, and a medical diagnosis of bipolar disorder.

Police were unable to locate Mother, and Maternal Grandmother said she could not take care of the child, as she was already caring for two of Mother's other children. Father stated he could not care for M.F.D., and initially told officers that he did not have any relatives that could care for her, so she was brought into the Department's care.

Following a bench trial, the court terminated Mother's and Father's parental rights on March 21, 2016. As for Father, the only subject of this appeal, the court's order specified the following grounds:

**8.    Termination of [Father's] Parental Rights**

8.1. The Court finds by clear and convincing evidence that termination of the parent child relationship, if any exists or could exist, between [Father], and [M.F.D.], a child the subject of this suit, is in the best interest of the child.

. . . .

8.3. Further, the Court finds by clear and convincing evidence that [Father] has:

8.3.1. engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to §161.001[b](1)(E), Texas Family Code;

8.3.2. failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who child (sic) been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to §161.001[b](l)(O), Texas Family Code[.]

Father timely brought this appeal.

### ISSUES ON APPEAL

Father advances the following four issues:

(1)    "Did the trial court abuse its discretion by terminating appellant's parental rights where DFPS expressly stated in its last supplemental answers to his interrogatories and in its

3

November 2015 permanency report that it was not seeking termination; he completed all tasks on his family service plan; and its primary permanency goal was family reunification with him?"

(2)     "Was the evidence legally and factually sufficient to support the termination of appellant's parental rights under §161.001(b)(1)(e)?"

(3)     "Was the evidence legally and factually Sufficient to support the termination finding under §161.001(b)(1)(o)?"

(4)     "Was the evidence legally and factually sufficient to support the best interest termination finding?"

### FAILURE TO SUPPLEMENT DISCOVERY

At the beginning of trial, Father's attorney complained that he "just recently" found out that the Department's goal for Father was termination of parental rights. In February 2016, the Department stated in an answer to an interrogatory that it was not seeking termination of Father's rights. Thus, Father's attorney argued:

> So obviously now that they've changed that goal, there's surprise and prejudice to me. They haven't simply supplemented their answers to interrogatories. And I ask that the Court not consider any evidence in support of any alleged termination against the father.

The Department responded that, on the date the interrogatories were answered identifying the Department's goal, the person that answered the interrogatories was not aware that Father had tested positive for drug use in August 2015.

4

The Department also explained that it had tried to reunify M.F.D. into a home with Father and Father's mother, but that a different judge denied the request for that placement on November 17, 2015, so the option of reunification with Father was off the table at that point. At that November 2015 hearing, the court ordered a home study be conducted on Father's sister, which the Department was optimistic about. The Department's and M.F.D.'s attorneys explained, however, that it turned out that she could not pass a home study either, and that it was just determined two weeks ago that the Department would move forward with termination of Father's rights:

> [M.F.D.'s AD LITEM]: [B]ut once we delved into it, and this just happened over the last few weeks, that placement is not going to work. Also the father wound up in jail subsequently, during the time between February 8th and now. So that's why the agency – I'm aware of, that's why they changed their goal.
>
> [FATHER'S ATTORNEY]: The father was allegedly in jail for traffic tickets. These -- the notion that the paternal aunt cannot be considered is something that Child Advocates hasn't completely chimed in on. They have looked into the father -- at the paternal aunt and they have analyzed her and yes, she had a DWI history quite sometime back but it is a good placement. She's married to a husband who can support, who already has a kid there in his house.
>
> THE COURT: Well this says that she has three DWI's in the last six years.
>
> [M.F.D.'s AD LITEM]: And other criminal history. There was DWI's in '11, '12 and '13, as well as, I believe, forgery and --
>
> THE COURT: Okay. So they denied that home study?
>
> [M.F.D.'S AD LITEM]: They initially denied it. But at first we thought there was one DWI. When we delved into it, there was extensive criminal history and there's some inaccuracies about what

5

she's doing in school, whether or not she's living with her husband, what have you.

THE COURT: Okay. Well we're gonna get back to this issue that -- do you have any response to his objection?

[THE DEPARTMENT'S ATTORNEY]: Judge, the agency has never removed – it's all depended on whether they do their service plan in whether the goal is going to change. And I know what the agency said then but the circumstances have changed now. And the agency has pleadings on file to terminate.

THE COURT: So you feel like his objection should be that you just didn't supplement your answer to discovery.

[THE DEPARTMENT'S ATTORNEY]: That would be correct. And we didn't -- the goal didn't change until after the discovery period had ended, Judge.

THE COURT: Well does that mean you can't supplement just because the discovery period has ended?

[THE DEPARTMENT'S ATTORNEY]: It does not, Judge. But they were still working the details out and, at least initially, I was informed that Child Advocates was not in favor of termination and I understand that that was a misunderstanding. I did not send -- I did not tell [Father's counsel] until this morning that the goal had changed.

. . . .

THE COURT: And the earliest he could have told you would have been maybe a month ago.

[THE DEPARTMENT'S ATTORNEY]: Two weeks ago, Judge.

THE COURT: Well two weeks ago?

[THE DEPARTMENT'S ATTORNEY]: Yes.

. . . .

[FATHER'S COUNSEL]: And in answers to these same interrogatories, Judge, they've said that Father has completed the entire family service plan. So I just want --

THE COURT: He may have completed the entire service plan but they say that he tested positive. Whatever he did. Okay. All right then. Your objection's overruled. Let's go forward.

6

The court then admitted the Department's exhibits in support of termination of Father's rights.

## A. Applicable Law and Standard of Review

The sole bases for Father's objections in the trial court, and in his brief here, are Rules 193.5 and 193.6 of the Texas Rules of Civil Procedure:

**193.5. Amending or Supplementing Responses to Written Discovery**

(a) *Duty to Amend or Supplement*. If a party learns that the party's response to written discovery was incomplete or incorrect when made, or, although complete and correct when made, is no longer complete and correct, the party must amend or supplement the response:

> (1) to the extent that the written discovery sought the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and

> (2) to the extent that the written discovery sought other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses.

(b) *Time and Form of Amended or Supplemental Response*. An amended or supplemental response must be made reasonably promptly after the party discovers the necessity for such a response. Except as otherwise provided by these rules, it is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly. An amended or supplemental response must be in the same form as the initial response and must be verified by the party if the original response was required to be verified by the party, but the failure to comply with this requirement does not make the amended or supplemental response untimely unless the party making the response refuses to correct the defect within a reasonable time after it is pointed out.

TEX. R. CIV. P. 193.5.

7

**193.6. Failing to Timely Respond—Effect on Trial**

(a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

 (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

 (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) *Burden of Establishing Exception.* The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

(c) *Continuance.* Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

TEX. R. CIV. P.193.6.

"Evidentiary rulings are committed to the trial court's sound discretion." *Perez v. Williams*, 474 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012)). A trial court abuses its discretion if it acts without regard for guiding rules or principles. *Id.* To show the trial court abused its discretion, an appellant must demonstrate that: (1) the court erred in not admitting the evidence; (2) the excluded

evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case. *Jones v. Pesak Bros. Constr., Inc.*, 416 S.W.3d 618, 632 (Tex. App.– Houston [1st Dist.] 2013, no pet.) (citing TEX. R. APP. P. 44.1(a), and *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)). We uphold the trial court's evidentiary ruling if we discern a legitimate basis for it. *Id.* (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)).

## B. Parties' Arguments

Father argues that Rule 193.6 "mandates exclusion of the undisclosed material or information" absent "a showing of good cause, lack of unfair surprise, or a lack of unfair prejudice." According to Father, the Department was required to amend its February 2015 responses to interrogatories that stated "At this time, the agency is not seeking termination of father's rights," and "The father has completed all tasks on his family plan of service."[1] Thus, Father complains that he was subject to trial by ambush, which—he asserts—is particularly troubling given the due process concerns present in termination of parental cases.

The Department counters that Father's brief "fails to acknowledge the entirety of the evidence relevant to [his] argument, nor accounts for the procedures

---

[1] Father also claims that Child Advocates affirmatively misled Father's counsel by telling him a week before trial that Child Advocates would not recommend terminating father's rights.

9

in place which afforded [Father] ample notice that his rights were at stake." The Department urges us to rely on the general rules regarding discovery sanctions, i.e., "whether (1) there is a direct relationship between the offensive conduct and the sanction imposed and (2) the sanction is no more severe than necessary to satisfy its legitimate purpose." (citing *In re Hood*, 113 S.W.3d 525, 529 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). It argues that, for policy reasons, application of Rule 193.6 would be particularly inappropriate in a termination of parental rights case:

> The Department contends that where a child's best interest is at stake, a sanction precluding the trial court's hearing of a claim for termination brought by the Department would be inappropriate as doing so would disregard the purpose of the Texas Family Code to ensure the protection of children. *See Hood*, 113 S.W.3d at 529 (stating it would only be in the most unusual circumstances where the facts would support precluding a hearing on the merits when a child's best interest is involved.) The Family Code makes clear that the primary purpose of the procedures governing suits brought by the Department is to protect children. *See* TEX. FAM. CODE ANN. §§261.101 et seq. (regarding mandated reporting of child abuse or neglect), 261.302 (requires Department to take action under Chapter 262 if necessary to protect the child from further abuse or neglect), 262.102 and 262.104 (authorizing the Department to take custody when there is an immediate danger to the child), 262.201 (Department may only retain custody where there is a continuing danger to the child), 161.001(b)(1) (allowing for the termination of a parent's rights in situations including where a parent abandons, endangers, or fails to support a child). These suits are therefore distinguished from *TransAmerican* [*Natural Gas Corp. v. Bryan Anesthesia, Inc.*, 811 S.W.2d 913, 917 (Tex. 1991)] and other civil suits, where parties who violate the rules of discovery risk only their own interest in the case. In a suit for parental termination, the trial court must consider the negative effects on the subject children of excluding evidence relevant

to their welfare, as any discovery sanction which bars the admission such evidence risks an impermanent or unsafe outcome for the child.

This case aptly demonstrates the impact such a sanction might have. In this case, as in all parental-rights termination cases, the evidence supportive of the Department's termination request was relevant to a determination regarding M.F.D.'s best interest. *See In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("Evidence establishing one of the predicate acts under section 161.001(1) also may be relevant to determining the best interest of the child."). Had the court granted [Father's] request to prohibit, "any evidence in support of any alleged termination against the father," it would have removed from M.F.D. at least one the protections afforded her by the Texas Family Code – the termination of her parents' rights. The court also would have been forced to make a determination regarding M.F.D. without the benefit of all the pertinent evidence. The claims in the Department's petition which did not involve termination regarded conservatorship of, and possession and access to the child.

### C. Analysis

Preliminarily, we reject the Department's argument that the general analysis applicable to discovery sanctions applies when a violation of Rule 193.6 occurs. We have previously held that the exclusion of evidence provided for under this rule "is mandatory, and the only permissible sanction for a violation . . . unless the trial court finds good cause or a lack of surprise or prejudice." *Dyer v. Cotton*, 333 S.W.3d 703, 717 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Gibbs v. Bureaus Inv. Grp. Portfolio No. 14, LLC*, 441 S.W.3d 764, 766 (Tex. App.—El Paso 2014, no pet.) ("The sanction for failure to comply with this rule is the 'automatic and mandatory' exclusion from trial of the omitted evidence.").

Accordingly, the issue we are presented with is not—as the Department contends—whether exclusion would be the least severe sanction necessary to meet legitimate goals; instead Father has properly framed the issue as whether the trial court abused its discretion by determining that the Department established that its failure to supplement its interrogatories to reflect its intent to seek termination of parental rights was supported by good cause or the lack of unfair surprise or unfair prejudice.

Rule 193.6 states that "[a] finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record," and Rule 193.5 provides an exception to the supplementation requirement if "the additional or corrective information has been made known to the other parties in writing." While Father argues that he first received notice that the Department was seeking termination the morning of trial in violation of Rule 193.5, the Department correctly asserts that the record does not support this contention. The Department's petition, a status-hearing order, and his family service plan all put Father on notice months before trial that the Department would seek termination of parental rights if reunification could not be achieved. At a November 17, 2015 hearing, Father was denied reunification with M.F.D., and a home study was

ordered on a different family member as a potential kinship placement.[2]  Father was thus on notice in November of 2015 that reunification was not achieved, leading the Department to seek termination of Father's parental rights, as was indicated in these earlier filings.

Father further claims he did not have an opportunity the morning of trial to put together a verified motion for continuance.  He concedes, however, that had he been alerted before trial of the Department's goals, he would have had time to prepare a motion had he needed one.  His argument ignores that an agreed motion for continuance need not be verified.  TEX. R. CIV. P. 251 ("No application for a continuance shall . . . be granted except for sufficient cause supported by affidavit, or *by consent of the parties*, or by operation of law." (emphasis added)).  Nothing

---

[2]  The record also contains a February 29, 2016 Permanency Report identifying the Department's "Primary Permanency Goal" as "Unrelated Adoption." *See* TEX. FAM. CODE § 263.303(a) ("Not later than the 10th day before the date set for each permanency hearing before a final order is rendered, the department shall file with the court and provide to each party, the child's attorney ad litem, the child's guardian ad litem, and the child's volunteer advocate a permanency progress report unless the court orders a different period for providing the report.").  Father does not deny receiving this report, but points out that "the record does not reflect" when he received it, as it "does not contain a certificate of service."  Alternatively, Father argues that "assuming father's trial counsel received and read it the day it was filed, that would still only be a week before the March 8 trial."  The record indicates that the report was filed with the court on February 29, 2016, and the body of the report identifies Father and Father's attorney as "person's entitled to notice of the hearing."  The report also states that Father was personally served on "3/5/2015."  Given that Father could not have been served in 2015 with a report prepared in 2016, this service recitation cannot be accurate.  While we assume the Department complied with its obligations to timely serve Father and Father's attorney under section 263.303(a) of the Texas Family Code, our disposition need not turn on when the report was served.

13

in the record indicates that Father asked the Department the morning of trial to agree to a continuance; nor does the record reflect that Father asked the court to exercise its discretion to continue the trial under Rule 193.6(c) ("Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response."). More importantly, given the record evidence that Father did have notice, in writing, months before trial that termination would be the Department's goal if reunification was not possible, coupled with the fact that reunification had in fact been denied in November of 2015, the trial court did not abuse its discretion in finding a "lack of unfair surprise or unfair prejudice." TEX. R. CIV. P. 193.6. We overrule Father's first issue.

## SUFFICENCY OF THE EVIDENCE

In issues two, three, and four, Father challenges the sufficiency of the evidence to support (1) termination under Family Code section 161.001(b)(1)(E) (endangerment), (2) termination under Family Code section 161.001(b)(1)(O) (failure to complete service plan), and (3) the finding that termination of Father's parental rights was in M.F.D.'s best interest.

14

## A. Applicable Law and Standard of Review

A parent's rights to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Therefore, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Recognizing that a parent may forfeit his or her parental rights by their acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *Id*.

In a case to terminate parental rights by the Department under § 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2008). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). "Only

one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *A.V.*, 113 S.W.3d at 362.

In a legal sufficiency review in a parental-rights-termination case, the appellate court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we must determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which the Department bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In*

*re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

**B. Sufficiency of the evidence under section 161.001(1)(b)(O)**

Subsection (O) allows termination when the parent has failed to satisfy conditions of a service plan. Specifically, it provides that the court can order termination upon a finding, by clear and convincing evidence, that a parent:

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(O) (West 2008). Texas courts generally take a strict approach to subsection (O)'s application. *In re D.N.*, 405 S.W.3d 863, 877 (Tex. App.—Amarillo 2013, no pet.). The burden of complying with the court order is on the parent. *Id.* at 878. Courts do not measure the "quantity of failure" or "degree of compliance." *Id.* at 877. Rather, courts only look for a parent's failure to comply. *See In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (holding subsection (O) does not intend an evaluation of a parent's partial

achievement of plan requirements); *see also In re A.W.*, No. 01-15-01030-CV, 2016 WL 3022824, at *7 (Tex. App.—Houston [1st Dist.] May 26, 2016, no. pet.) (mem. op.) (holding substantial compliance with a court-ordered service plan may be insufficient to avoid termination).

Despite this strict approach, the Department must present evidence that the plan established specific actions the parent must take for the return of the child. *In re D.N.*, 405 S.W.3d at 877-78. In *In re D.N.*, the mother challenging termination of her parental rights under subsection (O) had been directed by DFPS to simply "find whatever she could" regarding programs and services; the court-ordered plan did not outline any specific actions she needed to take to be in compliance. *In re D.N.*, 405 S.W.3d at 878. The court of appeals held that her rights could not be terminated under subsection (O) because the "do-as-best-as-you-can directive" was not specific enough and gave little way to measure the mother's compliance. *Id.*

Father challenges the sufficiency of the evidence "to prove that he failed to comply with the provisions of a court order that specifically establish[s] the actions necessary for the parent to obtain the return of the child." He "concedes the State met its burden with regard to the other elements of subsection (O)."

Father's service plan, dated April 15, 2015, was "approved and made on order" of the court May 7, 2015, and identified the following goals:

- [Father] will demonstrate the willingness and ability to protect the child from harm. [Father] will show the ability to parent and protect the child.

- [Father] will demonstrate the ability to put the needs of the children ahead his own.

- [Father] will demonstrate an ability to provide basic necessities such as food, clothing, shelter, medical care, and supervision for the child.

- [Father] will demonstrate an understanding of child development and appropriate expectations and the ability to put the physical, emotional, and social needs of the child ahead of his own needs and be able to provide the child with nurture and support in a protective environment.

- [Father] will abstain from the participation in criminal activity, drug usage and will accept responsibility for his past maladaptive behaviors.

- [Father] will demonstrate an ability to change the pattern of behaving that resulted in abuse/neglect.

The service plan also identified the following specific tasks for Father to complete:

- [Father] will maintain verifiable income for at least 6 months. He will provide the caseworker with all sources of income for himself. If [Father] is working, he loses his job or stops working he will provide the caseworker with proof of registration at The Work source and a list of 3 employers with name and phone number where he has submitted an application or resume per week. This list will be due at the end of each month.

- [Father] will refrain from all illegal drug use and criminal activity. [Father] will maintain a positive support system and will not associate with individuals who use alcohol or illegal substances.

- [Father] will maintain, safe, stable, and drug free housing for at least 6 months consecutively. He will maintain utilities such as electricity, gas, and water. [Father] will notify the worker within 24 hours should he relocate. He will provide the caseworker with his address and contacting information. He will allow the worker access to his

residence and notify the worker of any additional persons residing with him.

- [Father] will participate in parenting classes. Classes must be at least 6–8 weeks in length. [Father] will be provided with a list of parenting classes by [the Department] caseworker. [Father] will be responsible for enrolling in classes and for any fees associated with the parenting classes. Upon completion of the parenting classes, [Father] will provide the caseworker with his certificate of completion. He will be able to verbalize the parenting techniques he has learned in the parenting classes and put them into practice during family visits. No Internet Classes will be accepted.

- [Father] will participate in all court hearings, permanency conference and other meetings regarding his child. He will provide [the Department] worker with a release of information for all service providers, medical personnel and court representatives to obtain records and progress information regarding her case. He will also maintain contact with his [Department] caseworker on a monthly basis.

- [Father] will participate in psycho-social evaluation and follow all recommendations which may include more services. [The Department] will pay for these services as long as the client is compliant. If two appointments are missed, [Father] will be financially responsible for these services.

- [Father] will participate in individual therapy and follow all recommendations which may include more services. DFPS will pay for these services as long as the client is compliant. If two appointments are missed, [Father] will be financially responsible for these services.

- [Father] will participate in random UA and hair follicle drug and alcohol testing. Should he test positive or alter any tests, he will be required to complete a substance abuse assessment. If the UA is missed, it will be considered positive. If a dilute[d] or altered sample is provided, it will be considered a positive result. The agency will pay for this service as long as the client is compliant. If he is non-compliant, [Father] will be responsible for payment of this service.

At trial, B. Jefferies with the National Screening Center testified about the results of Father's drug tests. Specifically, on August 18, 2015, Father tested positive for cocaine, opiates, and alcohol. Jefferies opined that the drug levels Father tested at reflected that he was not using drugs very often, but "[i]t's more than a one time use." On cross examination, Jefferies testified that, in May, Father tested negative for drugs, but positive for alcohol. Father testified positive for alcohol again in November of 2015.

L. Henderson, M.F.D.'s case worker, testified that Father completed several of his service plan tasks, such as the parenting classes, individual counseling recommended following his psychological analysis, the substance abuse assessment, and out-patient treatment. When asked about what services Father had not completed, Henderson testified:

> A. He just hasn't been with his employment — is not sufficient income and he has not been able to sustain stable housing. And also he was arrested this past weekend which violates the no criminal acts.
>
> Q. Okay. But he was arrested for traffic offenses, correct?
>
> A. Correct.
>
> Q. But the fact that he had traffic offenses out there is a reflection of the stability of his home; is that not correct?
>
> A. Correct.

Henderson also testified that Father was not able to provide a stable home environment, and that while he did provide proof of income, Father does not have

sufficient income to care for his child. He also moved from his mother's home to his aunt's home, and then back to his mother's home, which Henderson testified does not satisfy his service plan's requirement of six months' stable housing.

Henderson testified that Father has a pretty long criminal history from before 2008, which includes a conviction for manufacturing and delivery of a controlled substance and possession of a controlled substance.

L. Thomas, the Court Appointed Special Advocate, acknowledged that she had told Father's attorney that she would not be recommending termination of Father's parental rights, but that she changed her mind after talking with M.F.D's ad litem and her supervisor.

Father testified that he and Mother lived together at Father's mother's home when M.F.D. was born. Because he worked all the time, Father explained that he did not realize that Mother was doing drugs regularly. He conceded that Mother would disappear for days at a time, but testified that he did not know what she was doing. The phone call that M.F.D. had been taken into the Department's care was a shock to him.

Father explained that his arrest the week prior to trial was for warrants related to unpaid traffic tickets. Father admitted to using cocaine "in the past" without a specific timeframe. He also admitted to numerous criminal convictions in the past, and testified that he is still on probation until 2024 for a conviction for

22

manufacturing and delivering controlled substances. He received a 15-year sentence, but was released from prison and placed on parole after serving four years. In response to questions from the trial court judge, he acknowledged that his positive drug tests since being released violated the terms of his parole and could result in incarceration for the remainder of his sentence. He had a parole revocation hearing scheduled for the day after the underlying parental-rights-termination trial.

Father testified that he has two other children, a 21-year old daughter and a son, who is being raised by his sister. Father wants M.F.D. to have a relationship with his other children and believes his sister can, and is willing, to help him take care of M.F.D.

Father's sister testified that Father had "turned his life around." When asked by the court about Father's drug use in August 2015, she clarified that she meant Father turned his life around at some point by quitting his practice of selling drugs. She testified that she was unaware of Father's recent drug use and that she was disappointed by it. She testified that Father's son has thrived living with her, and that she has been alcohol free for four years. She also testified that she and her husband wanted M.F.D. to be placed with them and that they had the income and ability to care for her.

When asked by the court to summarize the evidence in support of termination, the Department relied on Father's failed drug test (in violation of his service plan and his parole conditions), as well as the lack of stable housing and having an annual income of only $3,000 to support their seeking termination under 161.001(b)(1)(O).

The service plan required that Father refrain from all illegal drug use and criminal activity, as well as establish that he can "demonstrate an ability to provide basic necessities such as food, clothing, shelter, medical care, and supervision for the child." There was evidence presented that he did not satisfy these aspects of the service plan. And, as the trial court pointed out, his use of cocaine in violation of his parole conditions seriously jeopardizes his ability to provide for M.F.D. in the future, as his parole may be revoked. Father and his sister testified to his *sister's* ability to provide for M.F.D., but that does not bear on whether Father met his obligations under his service plan, leading to the trial court's finding that termination of Father's parental rights was warranted under 161.001(b)(1)(O). The trial court's rejection of Father's sister's request that M.F.D. be placed with her is not the subject of this appeal. We overrule Father's third issue on appeal. Because a single ground under section 161.001(b)(1) can support termination, we need not reach Father's second issue that the evidence to support termination under 161.001(b)(1)(E) is insufficient.

24

**C. Best Interest**

As a matter of public policy, "the best interest of a child is usually served by maintaining the parent-child relationship." *J.F.C.*, 96 S.W.3d at 294. Despite this important relationship, the Texas Supreme Court has held that "protection of the child is paramount" and "the rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *A.V.*, 113 S.W.3d at 361.

Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Courts weigh: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual; (6) the plans for the child by the parent and the individual seeking custody; (7) the stability of the home; (8) the parent's acts or omissions that indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *In re V.V.*, 349 S.W.3d 548, 557–58 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The Department need not prove every factor as a condition precedent to parental termination. *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Furthermore, lack of evidence about some factors does not

preclude a factfinder from reasonably concluding that termination is in the child's best interest. *Id*.

Father's argument about why termination of his parental rights is not in M.F.D.'s best interest is that his sister and her husband are appropriate relatives for placement. He points out that his sister has been at several court hearings and has been very active in trying to get M.F.D. placed with her. In addition, Father's sister has raised Father's other children.

The Department denied placement of M.F.D. with Father's sister following a home study. But the court instructed the Department "to look into it further." The Department conducted another home study, and still denied placement, in part because of a history of DWI convictions. Accordingly, the trial court denied Father's request that M.F.D. be placed with Father's sister and, as noted earlier, that decision is not the subject of this appeal.

Applying the factors relevant to determining if termination of Father's parental rights in is in M.F.D.'s best interest, we conclude that the trial court's finding is supported by legally and factually sufficient evidence.

*The desires of the child*. M.F.D. is too young to express an opinion about termination. But there was evidence that she has bonded with her Father at visits. Thus, the evidence relevant to this factor is neutral or weighs slightly against termination of Father's parental rights being in M.F.D.'s best interest.

*Emotional and physical needs now and in the future*. There is evidence that Father does not have the stability or sufficient income to take care of M.F.D. and that he may be incarcerated soon given that he violated the terms of his parole by using cocaine. Father did not testify to any plans he had for personally providing for his daughter's needs now or in the future, but expressed his desire that she be placed with his sister so that she "would receive the same upbringing as" his other kids that his sister raised. Given that Father has no plans to provide for his daughter, and given that his sister's home study has been denied (to the extent his *sister's* ability to meet M.F.D.'s needs is relevant), this factor weighs in favor of termination of Father's parental rights being in M.F.D.'s best interest.

*Stability of the home*. For the same reasons cited in the last category, this factor weighs in favor of termination being in M.F.D.'s best interest.

*Emotional and physical danger to the child now and in the future*. There is evidence that M.F.D. and Father have bonded, so his potential future incarceration could be emotionally traumatic to her. As for physical danger, Father admitted to using drugs and he left M.F.D. with Mother, who was using drugs. While he claimed to not know about Mother's drug use, he did concede that Mother would disappear for days at a time with no explanation. The trial court could have found Father's assertion that he did not know Mother, with whom Father left M.F.D., used drugs to not be credible. And, depending on the circumstances, Father's

27

current or continued drug use could potentially put M.F.D. at physical risk. On the other hand, there was evidence that he placed his other children with relatives out of harm's way, indicating that he might likewise be able to find a place for M.F.D. that would keep her out of harm's way. Given, however, the high risk Father could be reincarcerated for an extended period of time for parole violations, M.F.D. is in danger of that causing her emotional distress regardless of whether Father can find a relative to provide a physically safe home. Thus, this factor weighs slightly in favor of termination of Father's parental rights being in M.F.D.'s best interest.

*Plans for the child by parent and person seeking custody*. The only plan Father expressed for M.F.D. was to send her to live with his sister, who has twice failed a home study and with whom the courts have refused to place M.F.D. This factor weighs heavily in favor of termination of Father's parental rights being in M.F.D.'s best interest.

*Parental abilities of person seeking custody*. While there is evidence that Father acted appropriately in visits with M.F.D. and has a good relationship with his other children, there is no other evidence of his parental abilities, and he did not raise his other two children. To the extent that his sister's parental abilities are relevant, she has been found twice to not be a suitable placement. This factor is neutral.

*Parent's acts or omissions indicating that the existing parent-child relationship is not a proper one, and any excuse for acts or omissions.* There is evidence that Father left M.F.D. with Mother, and his excuse was that he did not know that Mother was doing drugs. The factfinder was entitled to discredit this testimony based upon the circumstantial evidence before it. While he has bonded appropriately during visits with M.F.D., Father has not taken steps to secure a home or income to support her. In addition, he has put himself at risk for reincarceration by using cocaine, which would leave M.F.D. at risk. From this, the trial court could conclude that Father has not taken actions consistent with a "proper" relationship with M.F.D. This factor weighs in favor of the trial court's finding that termination of Father's parental rights is in M.F.D.'s best interest.

Based on application of the above factors, we conclude that the trial court's determination that termination of Father's parental rights was in M.F.D.'s best interests and supported by legally and factually sufficient evidence. We overrule Father's fourth issue.

## CONCLUSION

We affirm the trial court's judgment. Father's motion for rehearing is denied.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.